## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

MBI SERVICES, LLC,

      Plaintiff,

vs.

APEX DISTRIBUTION LLC, HECTOR
ALVAREZ, IMITARI CORPORATION,
TERRY BARNES, GREGORY A. JONES,
DAVID K. TILLMAN, TILLMAN &
TILLMAN PLLC, JAN LAURENCE
SADICK, and J.L. SADICK P.C.,

      Defendants.

_____/

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff MBI Services, LLC files this Complaint against Defendants Apex Distribution LLC ("Apex"), Hector Alvarez ("Alvarez"), Imitari Corporation ("Imitari"), Terry Barnes ("Barnes"), Gregory A. Jones ("Jones"), David K. Tillman ("Mr. Tillman"), Tillman & Tillman PLLC (the "Tillman Law Firm"), Jan Laurence Sadick ("Mr. Sadick"), and J.L. Sadick P.C. (the "Sadick Law Firm"), and in support thereof alleges as follows:

### Nature of the Action

1.     This action arises in the context of a conspiratorial scheme perpetrated by Messrs. Barnes, Jones, and Alvarez, through the use of misrepresentations, concealment of material information, bogus documents, false promises and assurances, and fraud to lure Plaintiff (i) to enter into an agreement with Alvarez's company, Apex, (ii) to deliver the sum of $2,000,000 (the "Funds") to Apex, and (iii) after delivery of the Funds, to convince Plaintiff in delaying declaration of a default under the subject agreement until February 10, 2021. In fact, since declaring a default

under the subject agreement, Apex has failed to return the Funds to Plaintiff by February 25, 2021 as required under the subject agreement, and despite having been afforded an extension to return the Funds to Plaintiff through March 3, 2021, the Funds have yet to be returned. Moreover, Apex (as required under the subject agreement) and all the named defendants have failed to account for the use and location of the Funds despite repeated requests from Plaintiff. This is particularly egregious because of the history of fraud engaged in by many of the named defendants, the inconsistency of numerous statements and defendants' failures in connection with the subject transaction. The named defendants engaged in the referenced improper acts to control and convert the Funds and for the purpose of depriving Plaintiff of its share in revenues as mandated under the subject agreement.

### Jurisdiction and Venue

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of attorney's fees and costs.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §1391, as this is the judicial district in which a substantial part of the events and omissions giving rise to the claims set forth herein occurred. Additionally, the defendants have purposely availed themselves of the privilege of conducting activities within this judicial district, thereby invoking the benefits and protection of Florida law under Florida's long-arm statute.

4.      Apex and Alvarez have also submitted to this Court's jurisdiction under the subject agreement's forum-selection clause which is consistent with the Federal Due Process Clause.

### The Parties

5.      Plaintiff is a limited liability company duly authorized and existing by virtue of the

laws of the State of Florida.

6.     Apex is a New Jersey limited liability company.

7.     At all times material hereto, Alvarez was a New Jersey resident and is otherwise *sui juris*. Alvarez is a principal of Apex.

8.     Imitari is a Michigan corporation.

9.     At all times material hereto, Barnes was a Michigan resident and is otherwise *sui juris*. Barnes is a principal of Imitari.

10.    At all times material hereto, Jones was a New York resident and is otherwise *sui juris*. Jones is also a principal of Imitari.

11.    At all times material hereto, Mr. Tillman was a New York resident and is otherwise *sui juris*. Mr. Tillman is an attorney licensed to practice law in Michigan and a principal of the Tillman Law Firm.

12.    The Tillman Law Firm is a Michigan professional limited liability company.

13.    At all times material hereto, Mr. Sadick was a Texas resident and is otherwise *sui juris*. Mr. Sadick is an attorney licensed to practice law in Texas and a principal of the Sadick Law Firm.

14.    The Sadick Law Firm is a Texas professional services corporation.

## Factual Allegations

### A. Plaintiff and its relationship with Apex and Alvarez

15.    Plaintiff is engaged in the business of procuring medical personal protective equipment ("PPE"), including nitrile gloves, COVID test kits, particulate filtering facepieces (commonly referred to as masks), and the like for resale in the U.S. market.

16.     Around mid to late December 2020, Jorge Garcia-Menocal ("Garcia-Menocal"), one of Plaintiff's principals and owner, was introduced to Alvarez for the purpose of potentially engaging in business involving the purchase and sale of PPEs, namely, powder-free nitrile disposable examination gloves ("Gloves").

17.     Through the course of several conversations, Alvarez, inter alia, represented that (i) he and his company Apex had vast experience and connections involving the procurement and purchase of PPEs, including Gloves; (ii) he and Apex had transacted and consummated PPE sales and purchases; (iii) he and Apex had partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for the purpose of procuring Gloves; (iv) he and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, he and Apex had entered into charter agreements with FedEx and UPS; (v) Apex had various contracts with various U.S. local and state governments and the U.S. federal government ("Government Clients") wherein the referenced entities were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week; and (vi) he, Apex, and his partners, Barnes and Jones, had garnered more than 52 million dollars from investors to finance Glove purchases from a manufacturer.

18.     In any event, Alvarez proposed that in consideration for placing the Funds with Apex, Apex would pay $0.05 per box of Gloves imported for sale to Apex's Government Clients. Moreover, Alvarez represented that Apex was ready to import five (5) million boxes of Gloves per week and that Plaintiff's share of the profits would be $250,000 per week.

19.     Based on the foregoing representations, Garcia-Menocal communicated with his partners and discussed the possibility of placing the Funds with Apex.

20.     On December 30, 2020, Alvarez sent an email to Garcia-Menocal wherein Alvarez stated, in relevant part: "We are fortunate to have Gloves at the airport ready for Logistics to pick up and do SGS, Customs and Load. So we can have our first shipment delivered to our agency early next week." In the same email, Alvarez presented his attorney, Mr. Tillman for the purpose of negotiating and drafting the documents establishing Plaintiff and Apex's relationship, responsibilities, duties, etc.

21.     The same day, Garcia-Menocal informed Alvarez that the proposed project was being discussed with Plaintiff's partners and, in his email response, Alvarez stated: "We have planes ready and will have product here Friday if we do this soon. Which means your first return would happen Tuesday and 2nd delivery by weeks end next week. Looking forward to hearing from you."[1]

22.     On January 5, 2021, Garcia-Menocal received a draft of the proposed agreement from Mr. Tillman. Based on the email thread, Plaintiff surmises that the proposed agreement was drafted by Barnes and not Mr. Tillman. After having further discussions with Mr. Tillman regarding the proposed agreement and necessary revisions, on January 14, 2021, Mr. Tillman delivered a proposed joint venture agreement to Garcia-Menocal via email. Both Barnes and Alvarez were copied on the email.[2]

---

[1] Additionally, in an email sent by Alvarez to Garcia-Menocal on January 4, 2021, Alvarez stated: "I have been in communication with the Government buyer over the holiday and weekend and we are simply trying to work out the timing of when we can have product delivered to their chosen airports. As mentioned, we have live product ready to deliver and have provided Proof of Live video showing boxes we currently have waiting to be loaded."

[2] The same day, Alvarez sent emails to Garcia-Menocal stating: (i) "Hello Jorge, I believe Carmine called me in regards to your concerns on the transaction investment. I have structured this so that you are compensated based on a $2M investment on 5M boxes. Which would be $250k per transaction with a projected 4 transactions a month for the next 12 months. You would double your initial investment within the first 2 months. My contracts are for 12 months and are actually for much more than 5M boxes a week but the investment of $2M would be used for said 5M boxes.

23.     Ultimately, Garcia-Menocal revised the proposed agreement and in addition to the proposed agreement, Garcia-Menocal provided Mr. Tillman a security agreement and guaranty to be executed by Apex and Alvarez, respectively.

**B. The Agreements and delivery of the Funds**

24.     Having settled on the language, on January 19, 2021, Plaintiff and Apex executed a joint venture agreement (the "JVA") and a security agreement (the "Security Agreement") for the purpose of importing and selling Gloves. Alvarez also executed a personal guarantee (the "Guarantee") in favor of Plaintiff. Copies of the JVA, the Guarantee, and the Security Agreement are attached hereto as composite **Exhibit A**.

25.     The following day, Plaintiff delivered the Funds to Mr. Tillman, receipt of which was confirmed.

26.     In relevant part, the JVA provides as follows:

a.     That Apex is required to pay Plaintiff five cents ($0.05) per box of Gloves in consideration of Apex's use of Plaintiff's Funds;[3]

b.     That Apex would import approximately five million (5,000,000) boxes of Gloves per week;[4]

c.     That Apex is required to provide Plaintiff with all information and documents related to Apex's use of the Funds;[5]

---

But the agreement initially provided as a note stated a return per transaction up to 4 a month."; (ii) "If we can get this and wired early tomorrow, I have 5 new orders coming in but need to get this going. I do not in any way mean to be pushy but unfortunately these agencies are in dire need and continue to call me with updates on eta of deliveries. Looking forward to hearing from you and beginning our working relationship."

[3] See provision 1.1.
[4] See provision 1.1.
[5] See provision 1.1.

      d.    That the Funds were to be used only for shipping costs, product inspection, customs charges, product shipment insurance and payment of letters of credit to facilitate release of product by the manufacturer;[6] and

      e.    That in the event of termination of the JVA, Apex is obligated to return the Funds to Plaintiff within ten (10) business days from the date of termination.[7]

**C. Issues arise immediately**

27.    On January 21, 2021, Garcia-Menocal and Alvarez spoke and Alvarez informed Garcia-Menocal that the first Glove shipment would arrive on January 22, 2021. On January 22, 2021, Alvarez informed Garcia-Menocal and Plaintiff's principals that the shipment would arrive on the 25th. On the 25th, Alvarez then represented that the Gloves would arrive on the 26th. On the 26th, Alvarez then represented that the Gloves would arrive on the 27th. On the 27th, Alvarez represented that the Gloves would arrive on the 29th. At no time on the referenced dates, nor or any other dates were the Gloves delivered.

28.    With concerns mounting, Garcia-Menocal demanded documents form Alvarez evidencing performance. Specifically, Garcia-Menocal demanded (i) reports evidencing inspection of the Gloves, (ii) packing lists for the Gloves, (iii) booking information for the planes allegedly delivering the Gloves, and (iv) flight schedules. Essentially, Garcia-Menocal demanded documents that would buttress or support Alvarez's representations.

29.    On January 27, 2021, Alvarez represented that Plaintiff would receive a full report that would include inspection details, quantity of Gloves to be delivered, dates for departure and arrival and date on which Plaintiff would be paid for the first shipment, and for each item listed,

---

[6] See provision 3.2.
[7] See provision 3.2.

Alvarez represented that he would deliver supporting documentation. Notwithstanding, Alvarez did not deliver any of the requested information, nor did he deliver supporting documentation.

30.     The following day, Garcia-Menocal informed Alvarez that Plaintiff was going to declare a default under the JVA, as Apex was not performing as agreed.

31.     At this time, Alvarez asked if he could schedule a call with his partners Barnes and Jones and Plaintiff's principals.[8] Plaintiff agreed. During the call, Messrs. Alvarez, Barnes, and Jones made the following representations: (i) that the delays were attributable to banking issues surrounding the letter of credit,[9] (ii) that the banking issues were rectified,[10] (iii) that Messrs. Alvarez, Barnes, and Jones were having issues obtaining inspection reports but that the inspection of the Gloves had been conducted,[11] and (iv) _most importantly, that the Gloves were ready for delivery and being loaded onto planes as we spoke_.[12]

32.     Over the next week or so, Messrs. Jones and Alvarez continued to make many of the same representations previously made and delivered bogus status reports without supporting documentation, including one delivered by Jones stating that the Gloves would be delivered on February 8th or 9th and another sent by Alvarez indicating a delivery date of February 13th.

33.     Ultimately, the representations detailed above proved to be false, and only made to induce Plaintiff to stay in the deal and delay declaring a default under the JVA.

---

[8] Jones introduced himself as the "financing and banking partner," Alvarez as the partner with end users or buyers, such as the Government Clients, and Barnes as the "logistics and manufacturing" partner.
[9] This was represented by Jones. The issues were vague and unspecified.
[10] Alvarez, Barnes, and Jones made these representations.
[11] Alvarez, Barnes, and Jones made these representations.
[12] Based on this representation made by Jones and Barnes, and Jones' representation that he had invested 5 million dollars into the project and that his Israeli partners invested over 20 million dollars, Plaintiff chose to wait additional time. It is noteworthy that Jones also represented that he worked in the U.S. State Department and that he served some role in U.S. diplomacy. Plaintiff's research revealed that neither of these statements were true.

34.     Further aggravating matters, Plaintiff discovered that Messrs. Jones and Barnes, along with their (and Alvarez's attorney), Mr. Sadick had been sued in the U.S. District Court for the Southern District of Texas[13] (the "Texas Lawsuit") under circumstances that are strikingly similar to those in this action. When confronted with this newly acquired information, Alvarez confirmed that, indeed, he and his attorneys knew prior to the execution of the JVA that the Texas Lawsuit was pending, yet Alvarez conveniently concealed and withheld this crucial fact from Plaintiff, one that if Plaintiff had known prior to delivering the Funds, would have resulted in no deal with Apex or its partners.[14]

35.     Upon this discovery, Plaintiff surmised that the Funds were either not properly used or outright converted. To get answers, Garcia-Menocal contacted Mr. Tillman and asked to whom the Funds were delivered. Mr. Tillman stated that the Funds were delivered to Mr. Sadick. Garcia-Menocal then contacted Mr. Sadick, who informed that he received only part of the Funds—clearly these two statements cannot be true. Moreover, during the call with Mr. Sadick, Mr. Sadick seemed to be only vaguely aware of, or acquainted with, Apex and Alvarez.

**D. Plaintiff declares Default under the JVA**

36.     Because of the foregoing and Plaintiff's realization that Messrs. Alvarez, Barnes, and Jones were fraudsters, Plaintiff declared a default as prescribed by provision 3.1 of the JVA on February 10, 2021. A copy of the notice is attached hereto as **Exhibit B**.

37.     In the letter, Plaintiff demanded the return of the Funds pursuant to provision 3.2 of the JVA. Apex was required to remit the Funds to Plaintiff's counsel on or before February 25,

---

[13] Case No. 20-cv-2425.
[14] Up until this point, Plaintiff did not know of Jones' nor the extent of Barnes' connection with the subject transaction. Moreover, at no point before did Plaintiff know that the Funds would be delivered to Mr. Sadick.

2021. Additionally, because of the defendants' lack of transparency and failure to account for the use and location of the Funds and the revelation of the Texas Lawsuit, Plaintiff demanded of *all the defendants* an accounting detailing (i) dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties. This should have been a quite easy undertaking as nothing has been done to evidence performance under the JVA and therefore, the entirety of the Funds, or at least, the lion's share, should have been readily available. Lastly, in the letter, Plaintiff (i) instructed *all the defendants* that those in possession or constructive possession of any portion of the Funds were directed to retain same and notify Garcia-Menocal immediately of the amount currently held and (ii) notified *all the defendants* to cease the use of the Funds.

38.    Unsurprisingly, none of the defendants has complied with the demands (including numerous demands for an accounting directed at defendants' attorneys[15]) and most notably as of the date hereof, Plaintiff has not received the Funds nor an accounting regarding its use.

39.    Instead, on the eve of the deadline to return the Funds, Apex, through its attorney Mr. Tillman, requested until March 3, 2021, to return the Funds. Then on March 2, 2021, Apex, again through its attorney, Mr. Tillman requested until March 8, 2021, to return the Funds. The inference is then that rather than comply with the demands set forth in Plaintiff's February 10,

---

[15] In fact, through the date hereof, presumably because of confidentiality, Defendants' attorneys have refused to account for the Funds (particularly refusing to identify whom the Funds were delivered to) and have refused to identify which defendants the attorneys are corresponding with despite numerous requests for both. It remains unclear whom Mr. Tillman and Mr. Sadick represented in connection with the subject transaction.

2021 letter specifically not to continue to use, to garner, and to return the Funds, in an act of conversion, Apex, Alvarez, Barnes, and Jones have continued and continue to use the Funds to consummate a transaction.

40.     Defendants' failure to return the Funds to Plaintiff in contravention of the JVA has occasioned additional consequential damages to Plaintiff in the loss of other business opportunities.

41.     Plaintiff has retained the undersigned counsel in order that its rights and interests may be protected. Plaintiff has become obligated to pay the undersigned a reasonable attorney's fee. Plaintiff shall seek prevailing party fees pursuant to terms of the documents sought to be enforced herein.

42.     All conditions precedent to bringing this action have occurred, been performed or excused.

### COUNT I – BREACH OF CONTRACT
*(Against Apex)*

43.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

44.     Plaintiff and Apex entered into the JVA for the purpose of engaging in business involving the purchase and sale of Gloves.

45.     Plaintiff complied with its obligations in full under the JVA by delivering the Funds to Apex's attorney, Mr. Tillman, at the time the JVA was executed by the parties.

46.     Pursuant to the JVA, specifically provision 1.1, Apex was obligated to (i) import an estimated five million boxes of gloves on a weekly basis and to pay Plaintiff five cents ($0.05) per box of Gloves in consideration of Apex's use of Plaintiff's Funds and (ii) provide information and documents related to the use of the Funds.

47.     Also, per the JVA, the Funds were to be used by Apex only for shipping costs, product inspection, customs charges, product shipment insurance and payment of letters of credit to facilitate release of product by the manufacturer.

48.     Lastly, in the event of termination of the JVA, Apex was obligated to return the Funds to Plaintiff within ten (10) business days from the date of termination.

49.     Apex has breached the JVA by failing (i) to import an estimated five million boxes of Gloves weekly, (ii) to pay Plaintiff five cents ($0.05) per box of Gloves in consideration of Apex's use of Plaintiff's Funds, (iii) to provide information and documents related to the use of the Funds, and (iv) to use the Funds for shipping costs, product inspection, customs charges, product shipment insurance and payment of letters of credit to facilitate the release of Gloves by the manufacturer whom Apex supposedly partnered with.

50.     Since terminating the JVA on February 10, 2021, Apex has also breached the JVA by failing specifically to return the Funds to Plaintiff within ten (10) business days from the date of termination, to wit: February 25, 2021.

51.     Upon information and belief, Apex is currently continuing to use the Funds.

52.     As a result of the foregoing, Plaintiff has been damaged in the sum of $2,000,000 and additionally in the amounts Plaintiff should have been paid if Apex performed as required under the JVA.

Wherefore, Plaintiff demands judgment against Apex for damages, including consequential damages, attorney's fees pursuant to the JVA, together with costs and interest, and such other relief as the Court may deem just and proper.

## COUNT II – BREACH OF GUARANTEE
*(Against Alvarez)*

53.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

54.     Alvarez executed the Guaranty in favor of Plaintiff in consideration of Plaintiff's delivery of the Funds and Plaintiff's execution of the JVA.

55.     Despite having entered into the JVA, Apex breached the JVA by, among other things, failing (i) to import an estimated five million boxes of gloves weekly, (ii) to pay Plaintiff five cents ($0.05) per box of Gloves in consideration of Apex's use of Plaintiff's Funds, (iii) to provide information and documents related to the use of the Funds, and (iv) to use the Funds for shipping costs, product inspection, customs charges, product shipment insurance and payment of letters of credit to facilitate the release of Gloves by the manufacturer whom Apex supposedly partnered with.

56.     Additionally, since terminating the JVA on February 10, 2021, Apex has also breached the JVA by failing specifically to return the Funds to Plaintiff within ten (10) business days from the date of termination, to wit: February 25, 2021.

57.     As a result of the foregoing, Plaintiff has been damaged in the sum of $2,000,000 and additionally in the amounts Plaintiff should have been paid if Apex performed as required under the JVA.

58.     Pursuant to the terms of the Guaranty, Alvarez is liable for such indebtedness.

Wherefore, Plaintiff demands judgment against Alvarez for damages, including consequential damages, attorney's fees pursuant to the Guarantee, together with costs and interest, and such other relief as the Court may deem just and proper.

## COUNT III – EQUITABLE ACCOUNTING
*(Against Alvarez and Apex)*

59.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

60.     This is an action for equitable accounting.

61.     As a result of Alvarez and Apex's accounting practices, their failure to provide an accounting as demanded by Plaintiff, their failure to be forthcoming with Plaintiff, and conversion of the Funds for their own personal use, Plaintiff has been forced to bring this action.

62.     Pursuant to the JVA, Plaintiff is entitled to share in the profits generated by the sale of Gloves.

63.     Pursuant to the JVA, Plaintiff is also entitled to proof and all documents evidencing Apex's use of the Funds.

64.     Lastly, as a partner under the JVA, Plaintiff is entitled to a review of all documents regarding the use of the Funds.

65.     Throughout the course of their business relationship, Apex and Alvarez have, and continue to refuse to provide documents to Plaintiff evidencing the use of Plaintiff's Funds. Therefore, Plaintiff is unable to determine the amount of money due to it, as it lacks adequate written records related to sales of Gloves, costs, and profits.

66.     The matters in dispute between Plaintiff, Apex, and Alvarez may involve extensive records and a remedy at law will not provide as full, adequate, and expeditious a remedy as would an accounting. In addition, an accounting is particularly justified and necessary because Apex, Alvarez, and their partners failed to perform under the JVA, have continuously made false representations to Plaintiff regarding performance under the JVA, and notably the Funds or some portion thereof, have been delivered to the individuals sued in the Texas Lawsuit.

67.     Moreover, the records, billing information, bookkeeping, payout information and calculations necessary to determine compensation due to Plaintiff and the use of Plaintiff's Funds are all within the control of Alvarez.

68.     An accounting is designed to expedite the legal process in exactly those circumstances described herein, where the subject transactions are numerous as alleged herein and where the books and records are controlled by the parties from whom an accounting is sought.

Wherefore, Plaintiff respectfully requests that this Court enter a judgment for accounting, specifically an accounting detailing (i) the dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties; and damages against Alvarez and Apex; attorney's fees under the JVA, together with costs and interest pursuant to the Florida Statutes, and such other relief as the Court may deem just and proper.

## COUNT IV – FRAUDULENT INDUCEMENT, MISREPRESENTATION, AND CONCEALMENT – EXECUTION OF THE JVA AND DELIVERY OF THE FUNDS
### *(Against Alvarez)*

69.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

70.     Prior to and during negotiations leading up to the execution by Plaintiff of the JVA and indeed at all times subsequent thereto, Alvarez represented to Plaintiff that (i) he and his company, Apex, had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (ii) he and Apex had transacted and consummated PPE sales and purchases, (iii) he and Apex had partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for the purpose of procuring Gloves, (iv) he and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, he and Apex had entered into charter agreements with FedEx and UPS, (v) Apex had various contracts with Government Clients who were committed to purchases of Gloves exceeding

10 million boxes of Gloves per week, and (vi) he, Apex, and his partners, Barnes and Jones, had garnered more than 52 million dollars from investors to finance Glove purchases from the manufacturer.

71.     Alvarez additionally represented that the first shipment of Gloves was ready to load on planes at the airport in Asia and that the Gloves would arrive within less than a week of the date the JVA was executed, and the Funds delivered.

72.     Instead, after Plaintiff executed the JVA and delivered the Funds, Alvarez continued to provide new dates for delivery of the Gloves and upon each date Alvarez would provide a new later date for delivery.

73.     As a result, Plaintiff demanded documents form Alvarez that would buttress or support the representations.

74.     Specifically, Plaintiff demanded (i) reports evidencing inspection of the Gloves, (ii) packing lists for the Gloves, (iii) booking information for the planes allegedly delivering the Gloves, and (iv) flight schedules.

75.     Notwithstanding, Alvarez did not deliver any of the requested information, nor did he deliver supporting documentation.

76.     Accordingly, the clear inference is that Alvarez's representations were false at the time they were made, and Alvarez knew such representations to be false in every sense at the time they were made.

77.     Additionally, Plaintiff discovered that Messrs. Jones and Barnes, along with their (and Alvarez's) attorney, Mr. Sadick, were sued in the Texas Lawsuit under circumstances that are strikingly similar to those in this action. When confronted with this newly acquired information, Alvarez confirmed that indeed, he and his attorneys knew prior to the execution of the JVA that

the Texas Lawsuit was pending, yet Alvarez conveniently concealed and withheld this crucial fact from Plaintiff, one that if Plaintiff had known prior to delivering the Funds, would have resulted in no deal with Apex or its partners.

78.     Alvarez made such false representations (and concealed material information) for the purpose and with the intent that Plaintiff would act in reliance thereof, execute the JVA and deliver the Funds.

79.     Prior to the time the JVA was entered into and the Funds were delivered, Plaintiff was unaware of the falsity of Alvarez's representations, and Plaintiff entered into the JVA and delivered the Funds in accordance with the terms of the JVA in justifiable reliance on Alvarez's false representations.

80.     Plaintiff was justified in its reliance on Alvarez's statements and representations because Plaintiff lacked the knowledge necessary to discover the fraud at the time the statements and representations were made.

81.     If Plaintiff had known Alvarez was being untruthful, Plaintiff would not have entered into the JVA nor would it have delivered the Funds in accordance therewith.

82.     Plaintiff has been damaged by acting in reliance on Alverez's false representation.

Wherefore, Plaintiff demands judgment against Alvarez for damages, including consequential damages, together with costs and interest, and such other relief as the Court may deem just and proper. Plaintiff reserves the right to assert a claim for punitive damages in due course.

### COUNT V – FRAUDULENT INDUCEMENT/MISREPRESENTATION – DELAY IN DECLARING DEFAULT UNDER THE JVA
*(Against Alvarez, Jones, and Barnes)*

83.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

84.     On January 27, 2021, Alvarez represented that Plaintiff would receive a full report that would include inspection details, quantity of Gloves to be delivered, dates for departure and arrival and date on which Plaintiff would be paid for the first shipment, and for each item listed, Alvarez represented that he would deliver supporting documentation. Notwithstanding, Alvarez did not deliver any of the requested information, nor did he deliver supporting documentation.

85.     The following day, Plaintiff informed Alvarez that Plaintiff was going to declare a default under the JVA as Apex was not performing as agreed.

86.     At this time, Alvarez asked if he could schedule a call with his partners, Barnes and Jones, and Plaintiff's principals. Plaintiff agreed. During the call, Messrs. Alvarez, Barnes, and Jones made the following representations: (i) that the delays were attributable to banking issues surrounding the letter of credit,[16] (ii) that the banking issues were rectified,[17] (iii) that Messrs. Alvarez, Barnes, and Jones were having issues with obtaining inspection reports but that the inspection of the Gloves had been conducted,[18] and (iv) *most importantly, that the Gloves were ready for delivery and being loaded onto planes as we spoke*.[19]

87.     Over the next week or so, Messrs. Jones and Alvarez continued to make many of the same representations previously made and delivered bogus status reports without supporting documentation, including one delivered by Jones stating that the Gloves would be delivered on February 8th or 9th and another sent by Alvarez indicating a delivery date of February 13th.

88.     Ultimately, the representations detailed above proved to be false at the time they were made and were only made to induce Plaintiff to stay in the deal and delay declaring a default

---

[16] This was represented by Jones.
[17] Alvarez, Barnes, and Jones made these representations.
[18] Alvarez, Barnes, and Jones made these representations.
[19] Alvarez, Barnes, and Jones made these representations.

under the JVA so that Apex, Barnes, Jones, and Alvarez could continue to use and convert the Funds.

89.     Alvarez, Barnes, and Jones all knew such representations to be false in every sense at the time they were made.

90.     At the time the representations were made, Plaintiff was unaware of the falsity of Alvarez, Barnes, and Jones' representations, and Plaintiff delayed declaring a default under the JVA (and making a demand for the return of the Funds) in justifiable reliance on the false representations.

91.     Plaintiff was justified in its reliance on Alvarez, Barnes, and Jones' statements and representations because Plaintiff lacked the knowledge necessary to discover the fraud at the time the statements and representations were made.

92.     If Plaintiff had known Alvarez, Barnes, and Jones were being untruthful about all that was represented, Plaintiff would not have delayed declaring a default under the JVA and demanding the return of the Funds in accordance therewith.

93.     Plaintiff has been damaged by acting in reliance on Alvarez, Barnes, and Jones' false representations.

Wherefore, Plaintiff demands judgment against Alvarez, Barnes, and Jones for damages, including consequential damages, together with costs and interest, and such other relief as the Court may deem just and proper. Plaintiff reserves the right to assert a claim for punitive damages in due course.

### COUNT VI – NEGLIGENT MISREPRESENTATION – EXECUTION OF THE JVA AND DELIVERY OF THE FUNDS
*(Against Alvarez)*

94.     Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

95.     Prior to and during negotiations leading up to the execution by Plaintiff of the JVA and indeed at all times subsequent thereto, Alvarez represented to Plaintiff that (i) he and his company, Apex, had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (ii) he and Apex had transacted and consummated PPE sales and purchases, (iii) he and Apex had partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for purpose of procuring Gloves, (iv) he and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, he and Apex had entered into charter agreements with FedEx and UPS, (v) Apex had various contracts with Government Clients who were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week, and (vi) he, Apex, and his partners, Barnes and Jones, had garnered more than 52 million dollars from investors to finance Glove purchases from a manufacturer.

96.     Alvarez additionally represented that the first shipment of Gloves was ready to load on planes at the airport in Asia and that the Gloves would arrive within less than a week of the date the JVA was executed, and the Funds delivered.

97.     Instead, after Plaintiff executed the JVA and delivered the Funds, Alvarez continued to provide new dates for delivery of the Gloves and upon each date Alvarez would provide a new later date for delivery.

98.     As a result, Plaintiff demanded documents form Alvarez that would buttress or support the representations.

99.     Specifically, Plaintiff demanded (i) reports evidencing inspection of the Gloves, (ii) packing lists for the Gloves, (iii) booking information for the planes allegedly delivering the Gloves, and (iv) flight schedules.

100.     Notwithstanding, Alvarez did not deliver any of the requested information, nor did

he deliver supporting documentation.

101.    Even if Alvarez believed the representations were true, they were in fact false.

102.    Accordingly, Alvarez was negligent in making the representations because Alvarez should have known such representations to be false.

103.    Alvarez made such false representations for the purpose and with the intent that Plaintiff would act in reliance thereof, execute the JVA and deliver the Funds.

104.    Prior to the time the JVA was entered into and the Funds were delivered, Plaintiff was unaware of the falsity of Alvarez's representations, and Plaintiff entered into the JVA and delivered the Funds in accordance with the terms of the JVA in justifiable reliance on Alvarez's false representations.

105.    Plaintiff was justified in his reliance on Alvarez's statements and representations because Plaintiff lacked the knowledge necessary to discover the fraud at the time the statements and representations were made.

106.    If Plaintiff had known Alvarez was being untruthful, Plaintiff would not have entered into the JVA nor would it have delivered the Funds in accordance therewith.

107.    Plaintiff has been damaged by acting in reliance on Alverez's false representations.

Wherefore, Plaintiff demands judgment against Alvarez for damages including consequential damages, together with costs and interest, and such other relief as the Court may deem just and proper.

**COUNT VII – NEGLIGENT MISREPRESENTATION – DELAY IN DECLARING DEFAULT UNDER THE JVA**
*(Against Alvarez, Jones, and Barnes)*

108.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

109.    On January 27, 2021, Alvarez represented that Plaintiff would receive a full report

that would include inspection details, quantity of Gloves to be delivered, dates for departure and arrival, and the date on which Plaintiff would be paid for the first shipment, and for each item listed, Alvarez represented he would deliver supporting documentation. Notwithstanding, Alvarez did not deliver any of the requested information, nor did he deliver supporting documentation.

110.    The following day, Plaintiff informed Alvarez that Plaintiff was going to declare a default under the JVA as Apex was not performing as agreed.

111.    At this time Alvarez asked if he could schedule a call with his partners, Barnes and Jones, and Plaintiff's principals. Plaintiff agreed. During the call, Messrs. Alvarez, Barnes, and Jones made the following representations: (i) that the delays were attributable to banking issues surrounding the letter of credit,[20] (ii) that the banking issues were rectified,[21] (iii) that Messrs. Alvarez, Barnes, and Jones were having issues with obtaining inspection reports but that the inspection of the Gloves had been conducted,[22] and (iv) *most importantly, that the Gloves were ready for delivery and being loaded onto planes as we spoke*.[23]

112.    Over the following week or so, Messrs. Jones and Alvarez continued to make many of the same representations previously made and delivered bogus status reports without supporting documentation, including one delivered by Jones stating that the Gloves would be delivered on February 8th and 9th and another sent by Alvarez indicating a delivery date of February 13th.

113.    Ultimately, the representations detailed above proved to be false at the time they were made and were only made to induce Plaintiff to stay in the deal and delay declaring a default under the JVA so that Apex, Barnes, Jones, and Alvarez could continue to use and convert the

---

[20] This was represented by Jones.
[21] Alvarez, Barnes, and Jones made these representations.
[22] Alvarez, Barnes, and Jones made these representations.
[23] Alvarez, Barnes, and Jones made these representations.

Funds.

114.    Alvarez, Barnes, and Jones should have known that such representations were false in every sense at the time they were made, and they were negligent in making the representations even if they believed them to be true.

115.    At the time the representations were made, Plaintiff was unaware of the falsity of Alvarez, Barnes, and Jones' representations, and Plaintiff delayed declaring a default under the JVA (and making a demand for the return of the Funds) in justifiable reliance on the false representations.

116.    Plaintiff was justified in its reliance on Alvarez, Barnes, and Jones' statements and representations because Plaintiff lacked the knowledge necessary to discover the fraud at the time the statements and representations were made.

117.    If Plaintiff had known Alvarez, Barnes, and Jones were being untruthful about all that was represented, Plaintiff would not have delayed declaring a default under the JVA and demanding the return of the Funds in accordance therewith.

118.    Plaintiff has been damaged by acting in reliance on Alvarez, Barnes, and Jones' false representations.

Wherefore, Plaintiff demands judgment against Alvarez, Barnes, and Jones, for damages including consequential damages, together with costs and interest, and such other relief as the Court may deem just and proper.

## COUNT VIII – EQUITABLE ACCOUNTING
*(Against the Tillman Law Firm and Mr. Tillman)*

119.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

120.    This is an action for equitable accounting.

121. The Tillman Law Firm and Mr. Tillman represented Apex prior to and at the time the JVA was executed by and between Plaintiff and Apex.

122. The Tillman Law Firm and Mr. Tillman were delivered the Funds by Plaintiff as required under the JVA.

123. Throughout the course of Apex and Plaintiff's relationship and after declaration of a default under the JVA, the Tillman Law Firm and Mr. Tillman have continued to represent Apex and have remained in contact with Garcia-Menocal to discuss the default and status of reimbursement of the Funds to Plaintiff.

124. However, it is unclear whether the Tillman Law Firm and Mr. Tillman represent Alvarez, individually, Barnes, or Jones.[24]

125. Pursuant to the JVA, Plaintiff is entitled to share in the profits generated by the sale of Gloves.

126. Also pursuant to the JVA, Plaintiff is entitled to proof and all documents evidencing Apex's use of the Funds.

127. Lastly, as a partner under the JVA, Plaintiff is entitled to a review of all documents regarding the use of the Funds.

128. Throughout the course of their business relationship, Apex and Alvarez have, and continue to refuse to provide documents to Plaintiff evidencing the use of Plaintiff's Funds. Therefore, Plaintiff is unable to determine the amount of money due to it, as it lacks adequate written records related to sales of Gloves, costs, and profits.

---

[24] Presumably because of confidentiality issues, the Tillman Law Firm and Mr. Tillman have refused to inform Plaintiff with whom they are communicating.

129.     Upon Plaintiff's discovery that Messrs. Jones and Barnes, along with their (and Alvarez's) attorney, Mr. Sadick were sued in the Texas Lawsuit under circumstances that are strikingly similar to those in this action, Alvarez confirmed that indeed, he and his attorneys knew prior to the execution of the JVA that the Texas Lawsuit was pending but concealed and withheld this crucial fact from Plaintiff.

130.     Upon this discovery, Plaintiff surmised that the Funds were either not properly used or outright converted. To get answers, Garcia-Menocal contacted Mr. Tillman and asked to whom he delivered the Funds. Mr. Tillman stated that the Funds were delivered to Mr. Sadick. Garcia-Menocal then contacted Mr. Sadick, who informed that he received only part of the Funds—clearly these two statements cannot be true.

131.     Through the date hereof, the Tillman Law Firm and Mr. Tillman have not provided an accounting as requested in Plaintiff's February 10, 20210 letter of default under the JVA.

132.     As a result of the foregoing, Plaintiff has been forced to bring this action.

133.     Through the date hereof, Plaintiff has not received any proof regarding delivery of the Funds or any portion thereof to any third parties. Upon information and belief, however, Mr. Sadick, Alvarez, Jones, and Barnes may be in possession of some or all of the Funds under circumstances currently unknown to Plaintiff.

134.     In this instance, a remedy at law will not provide as full, adequate, and expeditious a remedy as would an accounting. In addition, an accounting is particularly justified and necessary because Apex, Alvarez, and their partners failed to perform under the JVA, have continuously made false representations to Plaintiff regarding performance under the JVA and notably the Funds or some portion thereof, have been delivered to the individuals sued in the Texas Lawsuit.

135.    Moreover, the records pertaining to the delivery of the Funds to third parties are in the possession of the Tillman Law Firm and Mr. Tillman.

136.    An accounting is designed to expedite the legal process in exactly those circumstances described herein, namely where the books and records are controlled by the parties from whom an accounting is sought.

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against the Tillman Law Firm and Mr. Tillman for an accounting, specifically an accounting detailing (i) dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties; together with costs and interest pursuant to the Florida Statutes, and such other relief as the Court may deem just and proper.

## COUNT IX – EQUITABLE ACCOUNTING
*(Against the Sadick Law Firm and Mr. Sadick)*

137.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

138.    This is an action for equitable accounting.

139.    The Sadick Law Firm and Mr. Sadick may or may not represent Apex. When asked by Garcia-Menocal on February 10, 2021, Mr. Sadick seemed to know only of Apex, while Alvarez contends that the Sadick Law Firm and Mr. Sadick represent Apex.

140.    Pursuant to the JVA, Plaintiff is entitled to share in the profits generated by the sale of Gloves.

141.    Also pursuant to the JVA, Plaintiff is entitled to proof and all documents evidencing Apex's use of the Funds.

142.     Lastly, as a partner under the JVA, Plaintiff is entitled to a review of all documents regarding the use of the Funds.

143.     Throughout the course of their business relationship, Apex and Alvarez have, and continue to refuse to provide documents to Plaintiff evidencing the use of Plaintiff's Funds. Therefore, Plaintiff is unable to determine the amount of money due to it, as it lacks adequate written records related to sales of Gloves, costs, and profits.

144.     Upon Plaintiff's discovery that Messrs. Jones and Barnes, along with Mr. Sadick, were sued in the Texas Lawsuit under circumstances that are strikingly similar to those in this action, Alvarez confirmed that indeed, he and his attorneys knew prior to the execution of the JVA that the Texas Lawsuit was pending but concealed and withheld this crucial fact from Plaintiff.

145.     Upon this discovery, Plaintiff surmised that the Funds were either not properly used or outright converted. To get answers, Garcia-Menocal contacted Mr. Tillman and asked to whom he delivered the Funds. Mr. Tillman stated that the Funds were delivered to Mr. Sadick. Garcia-Menocal then contacted Mr. Sadick, who informed that he received only part of the Funds—clearly these two statements cannot be true.

146.     Additionally, when asked, Mr. Sadick refused to identify those to whom he paid any portion of the Funds and the amounts paid. Additionally, the Sadick Law Firm and Mr. Sadick have failed to provide an accounting as directed in Plaintiff's February 10, 2021 letter of default under the JVA.

147.     As a result of the foregoing, Plaintiff has been forced to bring this action.

148.     Through the date hereof, Plaintiff has not received any proof regarding delivery of the Funds or any portion thereof to any third parties. Upon information and belief, however, Mr.

Sadick, Alvarez, Jones, and Barnes may be in possession of some or all of the Funds under circumstances currently unknown to Plaintiff.

149.    In this instance, a remedy at law will not provide as full, adequate, and expeditious a remedy as would an accounting. In addition, an accounting is particularly justified and necessary because Apex, Alvarez, and their partners failed to perform under the JVA, have continuously made false representations to Plaintiff regarding performance under the JVA, and notably the Funds or some portion thereof, have been delivered to the individuals sued in the Texas Lawsuit.

150.    Moreover, the records pertaining to the delivery of the Funds to third parties, are in the possession of the Sadick Law Firm and Mr. Sadick.

151.    An accounting is designed to expedite the legal process in exactly those circumstances described herein namely where the books and records are controlled by the parties from whom an accounting is sought.

Wherefore, Plaintiff respectfully requests that this Court enter a judgment against the Sadick Law Firm and Mr. Sadick for an accounting, specifically an accounting detailing (i) dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties; together with costs and interest pursuant to the Florida Statutes, and such other relief as the Court may deem just and proper.

### COUNT X – EQUITABLE ACCOUNTING
*(Against Imitari, Barnes and Jones)*

152.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

153.    This is an action for equitable accounting.

154.    Pursuant to the JVA, Plaintiff is entitled to share in the profits generated by the sale of Gloves.

155.    Also pursuant to the JVA, Plaintiff is entitled to proof and all documents evidencing Apex's use of the Funds.

156.    Lastly, as a partner under the JVA, Plaintiff is entitled to a review of all documents regarding the use of the Funds.

157.    Throughout the course of their business relationship, Apex and Alvarez, and their partners Imitari, Barnes, and Jones have, and continue to refuse to provide documents to Plaintiff evidencing the use of Plaintiff's Funds.

158.    Upon Plaintiff's discovery that Messrs. Jones and Barnes, along with Mr. Sadick had been sued in the Texas Lawsuit under circumstances that are strikingly similar to those in this action, Alvarez confirmed that indeed, he and his attorneys knew prior to the execution of the JVA that the Texas Lawsuit was pending but concealed and withheld this crucial fact from Plaintiff.

159.    Upon this discovery, Plaintiff surmised that the Funds were either not properly used or outright converted. To get answers, Garcia-Menocal contacted Mr. Tillman and asked to whom he delivered the Funds. Mr. Tillman stated that the Funds were delivered to Mr. Sadick. Garcia-Menocal then contacted Mr. Sadick, who refused to identify those to whom he paid any portion of the Funds and the amounts paid.

160.    As a result of the foregoing, Plaintiff has been forced to bring this action.

161.    Through the date hereof, Plaintiff has not received any proof regarding delivery of the Funds or any portion thereof to any third parties. Upon information and belief, however, Imitari, Jones, and Barnes may be in possession of some or all of the Funds under circumstances currently unknown to Plaintiff.

162.    In this instance, a remedy at law will not provide as full, adequate, and expeditious a remedy as would an accounting. In addition, an accounting is particularly justified and necessary because Apex, Alvarez, and their partners, including Imitari, Barnes, and Jones failed to perform under the JVA, have continuously made false representations to Plaintiff regarding performance under the JVA, and notably the Funds or some portion thereof have been delivered to the individuals sued in the Texas Lawsuit.

163.    Moreover, the records pertaining to the receipt of the Funds by Imitari, Barnes, and Jones are in their possession.

164.    An accounting is designed to expedite the legal process in exactly those circumstances described herein namely where the books and records are controlled by the parties from whom an accounting is sought.

Wherefore, Plaintiff respectfully requests that this Court enter a judgment for an accounting and damages against Imitari, Barnes, and Jones, together with costs and interest pursuant to the Florida Statutes, and such other relief as the Court may deem just and proper.

## COUNT XI – CONVERSION
*(Against Apex, Alvarez, Imitari, Barnes, and Jones)*

165.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

166.    Plaintiff delivered the Funds to Apex's attorney, the Tillman Law Firm and Mr. Tillman.

167.    Because of Apex's breaches of the JVA and Plaintiff's realization that Messrs. Alvarez, Barnes, and Jones were fraudsters, Plaintiff declared a default as prescribed by provision 3.1 of the JVA on February 10, 2021.

168.    In its letter, Plaintiff demanded the return of the Funds pursuant to provision 3.2 of the JVA. As such, Apex (and all those to whom the letter was directed, which included Alvarez,

Barnes, and Jones) was required to remit the Funds to Plaintiff's counsel on or before February 25, 2021.

169.    Apex converted the Funds and refused to return the Funds despite Plaintiff's demand for return of the same and Apex's obligations under the JVA.

170.    Alvarez, Imitari, Barnes, and Jones, upon information and belief, have wrongfully come into possession of the Funds or some portion thereof under circumstances currently unknown to Plaintiff.

171.    They too have converted the Funds and refused to return the Funds despite Plaintiff's demand for return of the same.

172.    Without justification, Apex, Alvarez, Imitari, Barnes, and Jones tortuously, willfully, wantonly, maliciously, and intentionally disposed of or converted the Funds to their own use prior to and subsequent to the declaration of default under the JVA by Plaintiff.

173.    As a result of Apex, Alvarez, Imitari, Barnes, and Jones' actions, Plaintiff has suffered damages in the sum of $2,000,000.

Wherefore, Plaintiff demands judgment against Apex, Alvarez, Imitari, Barnes, and Jones together with costs and interest pursuant to the Florida Statutes, and such other relief as the Court may deem just and proper.

## COUNT XII – BREACH OF FIDUCIARY DUTY
*(Against Alvarez)*

174.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

175.    At all times relevant hereto, as a joint venture partner, Alvarez owed Plaintiff a fiduciary duty.

176.    Specifically, Alvarez had an affirmative duty of diligence and good faith to Plaintiff and to exercise any rights consistently with his obligations of good faith and fair dealing.

177.    Alvarez breached his fiduciary duties by repeatedly and consistently making false statements to Plaintiff which include, inter alia, that: (i) the first Glove shipment would arrive within less than a week from the date the JVA was executed, (ii) he and his company Apex had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (iii) he and Apex had transacted and consummated PPE sales and purchases, (iv) he and Apex had partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for the purpose of procuring Gloves, (v) he and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, he and Apex had entered into charter agreements with FedEx and UPS, (vi) Apex had various contracts with Government Clients wherein the referenced entities were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week, and (vii) he, Apex, and his partners, Barnes and Jones, had garnered more than 52 million dollars from investors to finances Glove purchases from a manufacturer.

178.    Furthermore, Alvarez breached his fiduciary duties by (i) refusing to keep Plaintiff informed of the underlying transaction, (ii) misrepresenting the status of the importation of Gloves, (iii) failing to provide documents and information that substantiate performance under the JVA, (iv) failing to account for the use of Plaintiff's Funds, (v) converting Plaintiff's Funds, (vi) refusing to return the Funds upon demand by Plaintiff per the JVA, and (vii) concealing material information from Plaintiff as it pertains to Alvarez's partners, Jones and Barnes.

179.    As a result of Alvarez's breach of his fiduciary duties, Plaintiff has suffered damages.

Wherefore, Plaintiff demands judgment against Alvarez for damages, including consequential damages, together with costs and interest pursuant to the Florida Statutes, and such other relief as this Court may deem just and proper.

## COUNT XIII – UNJUST ENRICHMENT, RESTITUTION, AND DISGORGEMENT
*(Against Apex, Alvarez, Imitari, Barnes, and Jones)*

180.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

181.    Plaintiff provided the Funds as required under the JVA.

182.    In doing so, Plaintiff conferred a benefit upon Apex, Alvarez, Imitari, Barnes, and Jones in the sum of $2,000,000.00.

183.    Apex, Alvarez, Imitari, Barnes, and Jones appreciated this benefit and were thereby enriched.

184.    Apex, Alvarez, Imitari, Barnes, and Jones accepted and have retained this benefit under circumstances that make it inequitable to do so without repaying this benefit.

Wherefore, Plaintiff demands judgment against Apex, Alvarez, Imitari, Barnes, and Jones for damages, restitution, and disgorgement of all portions of the Funds, compensatory damages, consequential damages, costs, interest, disgorgement, equitable forfeiture, and any other relief this Court deems just and proper.

## COUNT XIV - CIVIL CONSPIRACY TO COMMIT FRAUD AND CONVERSION
*(Against Alvarez, Barnes, and Jones)*

185.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

186.    This is an action against Alvarez, Barnes, and Jones for civil conspiracy to commit conversion and fraud.

187.    At all times relevant hereto, Alvarez, Barnes, and Jones engaged in a scheme whereby, in order to obtain and then convert the Funds rightfully due onto Plaintiff under false

pretenses and in an effort to do the same, they made the following coordinated misrepresentations that: (i) the first Glove shipment would arrive within less than a week from the date the JVA was executed, (ii) Alvarez and his company, Apex, had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (iii) Alvarez and Apex had transacted and consummated PPE sales and purchases, (iv) Alvarez and Apex partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for the purpose of procuring Gloves, (v) Alvarez and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, Alvarez and Apex had entered into charter agreements with FedEx and UPS, (vi) Apex had various contracts with various Government Clients wherein the referenced entities were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week, and (vii) Alvarez, Apex, Barnes, and Jones had garnered more than 52 million dollars from investors to finance Glove purchases from a manufacturer.

188.     In furtherance of their agreement to commit fraud and conversion, Alvarez, Barnes, and Jones knowingly and deliberately (i) refused to keep Plaintiff informed of the underlying transaction, (ii) misrepresented the status of the importation of Gloves, (iii) failed to provide documents and information that substantiate performance under the JVA, (iv) failed to account for the use of Plaintiff's Funds, (v) refused to return the Funds upon demand by Plaintiff per the JVA, and (vii) concealed material information from Plaintiff as it pertains to Jones and Barnes.

189.     At all times material hereto, Alvarez, Barnes, and Jones acted in furtherance of a common plan, scheme, or design intended to benefit themselves and profit from the scheme at the expense of Plaintiff.

190.     Alvarez, Barnes, and Jones conspired and agreed to commit a fraud and conversion and, at all times relevant hereto, Alvarez, Barnes, and Jones knew that the misrepresentations made

were false in every regard.

191.   Alvarez, Barnes, and Jones furthered this conspiracy by, among other things, providing false information in the way of reports to Plaintiff.

192.   Alvarez, Barnes, and Jones knew that the misrepresentations made were false.

193.   Plaintiff has incurred substantial damages as a result of Alvarez, Barnes, and Jones' wrongful conduct.

194.   Plaintiff is also entitled to an award of punitive damages based on Alvarez, Barnes, and Jones' wanton, malicious, deliberately, and/or grossly negligent conduct described herein.

Wherefore, Plaintiff demands judgment against Alvarez, Barnes, and Jones for damages (including punitive damages) together with costs and interest pursuant to the Florida Statutes and such other relief as this Court deems just and proper.

## COUNT XV - FRAUD/CONSTRUCTIVE FRAUD
### *(Against Alvarez, Barnes, and Jones)*

195.   Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

196.   As joint venture partners, Alvarez owed fiduciary duties to Plaintiff. However, Alvarez abused his fiduciary relationship with Plaintiff and took unconscionable advantage of the relationship at the expense of Plaintiff as detailed below.

197.   Alvarez, and his partners, Barnes and Jones, engaged in a scheme whereby said defendants fraudulently converted the Funds rightfully due onto Plaintiff under false pretenses and in an effort to do the same, Alvarez, Barnes, and Jones would misrepresent that: (i) the first Glove shipment would arrive within less than a week from the date the JVA was executed, (ii) Alvarez and his company, Apex, had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (iii) Alvarez and Apex had transacted and consummated PPE sales and purchases, (iv) Alvarez and Apex partnered with USANMAZ 4G, presumably a Glove

manufacturer in Asia for the purpose of procuring Gloves, (v) Alvarez and Apex had partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, Alvarez and Apex had entered into charter agreements with FedEx and UPS, (vi) Apex had various contracts with various Government Clients wherein the referenced entities were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week, and (vii) Alvarez, Apex, Barnes, and Jones had garnered more than 52 million dollars from investors to finance Glove purchases from a manufacturer.

198.    In furtherance of the fraud and conversion, Alvarez, Barnes, and Jones knowingly and deliberately (i) refused to keep Plaintiff informed of the underlying transaction, (ii) misrepresented the status of the importation of Gloves, (iii) failed to provide documents and information that substantiate performance under the JVA, (iv) failed to account for the use of Plaintiff's Funds, (v) refused to return the Funds upon demand by Plaintiff per the JVA, and (vii) concealed material information from Plaintiff as it pertains to Jones and Barnes.

199.    Alvarez, Barnes, and Jones' narratives presented to Plaintiff were patently false made solely for the purpose of converting the Funds.

200.    Alvarez, Barnes, and Jones achieved this by misrepresenting verifiable facts to Plaintiff and by concealing material information and refusing to produce documents related to Apex's performance under the JVA.

201.    In fact, contrary to Alvarez, Barnes, and Jones' representations, and upon credible information and belief, Alvarez, Barnes, and Jones could never produce documents evidencing performance because they were simply not performing anything.

202.    At all times relevant hereto, Alvarez, Barnes, and Jones knew that none of the forgoing representations were true.

203.     Alvarez, Barnes, and Jones took the foregoing actions to defraud Plaintiff.

204.     Alvarez, Barnes, and Jones' representations were false at the time they were made, and Alvarez, Barnes, and Jones knew such representations to be false at the time they were made.

205.     Plaintiff has been damaged by Alvarez, Barnes, and Jones' actions, and continues to be damaged.

Wherefore, Plaintiff demands judgment against Alvarez, Barnes, and Jones for damages (including punitive damages) together with costs and interest pursuant to the Florida Statutes and such other relief as this Court deems just and proper.

### COUNT XVI – CONSTRUCTIVE TRUST
*(Against all defendants)*

206.     Paragraphs 1 through 42, 197, and 198 are repeated and realleged as if fully set forth herein.

207.     This is an action for the establishment of a constructive trust.

208.     Alvarez, Barnes, and Jones engaged in a fraudulent scheme whereby they made misrepresentations to Plaintiff for the purpose of converting and divesting Plaintiff of the Funds. Many of Defendants' misrepresentations are set out in paragraphs 197 and 198, above.

209.     Alvarez, Barnes, and Jones knew the representations to be false at the time they were made.

210.     Plaintiff, trusting in the confidential relationship it possessed with Alvarez, was unaware of the falsity of said representations.

211.     Alvarez, Barnes, and Jones realized the benefit of doing business through Plaintiff and Alvarez, Barnes, and Jones have been wrongfully and unjustly enriched.

212.     Mr. Tillman, the Tillman Law Firm, Mr. Sadick, and/or the Sadick Law Firm may be in possession of some portion of the Funds.

213.    Plaintiff has no adequate remedy at law.

Wherefore, Plaintiff requests that this Court establish a constructive trust on the Funds in favor of Plaintiff together with court costs and interest pursuant to the Florida Statutes.

## COUNT XVII – DECLARATORY ACTION
### *(Against all defendants)*

214.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

215.    This is an action for declaratory relief and for supplemental legal and equitable relief pursuant to Chapter 86, Florida Statutes.

216.    There is a bona fide, actual, present, and practical need for the declaration.

217.    More particularly, because Apex has failed to account for the Funds' use (as have all the defendants despite being directed to do so in Plaintiff's JVA default letter dated February 10, 2021), Plaintiff is uncertain as to (i) the dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties.

218.    Those currently maintaining the Funds or any portions thereof, including the named defendants may claim some interest in the Funds.

219.    Such claims to the Funds are adverse and antagonistic to Plaintiff and are before the Court by proper process and the relief sough herein is not merely for legal advice but for a declaration determining the rights of Plaintiff with respect to ownership of, and entitlement to the Funds.

Wherefore, Plaintiff respectfully asks this Court for a declaration pursuant to Chapters 86 and 790, Florida Statutes, that Plaintiff is solely entitled to the Funds wherever held; attorney's

fees, together with costs and interest pursuant to the Florida Statutes, and such other relief as this Court may deem just and proper.

## <u>COUNT XVIII – INJUNCTION</u>
### *(Against all defendants)*

220.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

221.    This is an action for a mandatory injunction to require the named defendants (to the extent that any one of them came into possession of the Funds) to provide (i) dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, and (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties.

222.    Additionally, Plaintiff seeks an injunction requiring the named defendants (to the extent that any one of them came into possession of the Funds) to (i) disclose to Plaintiff immediately the amount currently held and (ii) cease the use of the Funds for any reason whatsoever.

223.    Based on the facts alleged herein, and detailed below, there exists a clear legal right to the relief requested herein, free from a reasonable doubt.

224.    Specifically, the JVA provides:

a.    That Apex is required to provide Plaintiff with all information and documents related to Apex's use of the Funds;

b.    That the Funds were to be used only for shipping costs, product inspection, customs charges, product shipment insurance, and payment of letters of credit to facilitate release of the product by the manufacturer; and

   c.  That in the event of termination of the JVA, Apex was obligated to return the Funds to Plaintiff within ten (10) business days from the date of termination.

225. The referenced provisions are clear and unambiguous.

226. The refusal to comply with the referenced provisions has caused damage to Plaintiff and if Defendants are not forced to comply with the foregoing, Plaintiff will be irreparably injured. Specifically, there is a strong likelihood that Apex, Imitari, Alvarez, Barnes, and Jones will continue to use the Funds.

227. Given the facts alleged, there is a high probability that Plaintiff will prevail on the merits of any action instituted against Defendants.

228. The damages suffered by Plaintiff outweigh any possible harm to the named defendants.

229. Granting the injunction will not disserve the public interest and Plaintiff does not have an adequate remedy at law.

Wherefore, Plaintiff respectfully asks this Court to enter an Order requiring the named defendants (to the extent that any one of them came into possession of the Funds) to provide/disclose (i) dates on which the Funds (or any portion thereof) were received by, or delivered to, any third parties, (ii) the manner (i.e. bank wire, cash, check, etc.) in which the Funds (or any portion thereof) were received by, or delivered to any third parties, (iii) the identity of any third parties who received any portion of the Funds, (iv) the reason or purpose the Funds (or any portion thereof) were delivered to any third parties. Additionally, Plaintiff seeks an injunction requiring the named defendants (to the extent that any one of them came into possession of the Funds) to (i) disclose to Plaintiff immediately the amount currently held and (ii) cease the use of the Funds for any reason whatsoever.

## COUNT XIX – DECEPTIVE AND UNFAIR TRADE PRACTICES
### *(Against Apex, Imitari, Alvarez, Barnes, and Jones)*

230.    Paragraphs 1 through 42 are repeated and realleged as if fully set forth herein.

231.    At all times relevant to this action, Apex, Imitari, Alvarez, Barnes, and Jones were engaged in the business of procurement and sale of PPEs including medical gloves.

232.    Notwithstanding the existence of the JVA, Apex, Imitari, Alvarez, Barnes, and Jones used unconscionable acts or practices and engaged in unfair and deceptive practices in the conduct of their business in a scheme to induce Plaintiff to enter into the JVA and to tender the Funds for the purchase of Gloves.

233.    Specifically, Alvarez (through Apex) and Barnes and Jones (both through Imitari), engaged in a scheme whereby, in order to obtain and then convert the Funds rightfully due onto Plaintiff under false pretenses and in an effort to do same, Alvarez, Barnes, and Jones made the following coordinated misrepresentations that: (i) the first Glove shipment would arrive within less than a week from the date the JVA was executed, (ii) Alvarez and his company, Apex, had vast experience and connections involving the procurement and purchase of PPEs including Gloves, (iii) Alvarez and Apex had transacted and consummated PPE sales and purchases, (iv) Alvarez and Apex partnered with USANMAZ 4G, presumably a Glove manufacturer in Asia for the purpose of procuring Gloves, (v) Alvarez and Apex partnered with Emirates (an airline) for the purpose of providing commercial air freight and logistics and that for the same purpose, Alvarez and Apex had entered into charter agreements with FedEx and UPS, (vi) Apex had various contracts with various Government Clients wherein the referenced entities were committed to purchases of Gloves exceeding 10 million boxes of Gloves per week, and (vii) Alvarez, Apex, Barnes, and Jones had garnered more than 52 million dollars from investors to finance Glove purchases from a manufacturer.

234.     In furtherance of their fraudulent scheme, Apex, Imitari, Alvarez, Barnes, and Jones knowingly and deliberately (i) refused to keep Plaintiff informed of the underlying transaction, (ii) misrepresented the status of the importation of Gloves, (iii) failed to provide documents and information that substantiate performance under the JVA, (iv) failed to account for the use of Plaintiff's Funds, (v) refused to return the Funds upon demand by Plaintiff per the JVA, and (vii) concealed material information from Plaintiff as it pertains to Jones and Barnes.

235.     Apex, Imitari, Alvarez, Barnes, and Jones' unconscionable acts or practices and unfair and deceptive practices in the conduct of their business with Plaintiff include, among other things, the conversion and continued use of Plaintiff's Funds.

236.     As a result of the unconscionable, unfair, and deceptive acts and practices of Apex, Imitari, Alvarez, Barnes, and Jones, Plaintiff suffered actual damages in the sum of $2,000,000.

Wherefore, Plaintiff demands judgment against Apex, Imitari, Alvarez, Barnes, and Jones for actual damages, together with costs, interest, penalties, and attorney's fees pursuant to the applicable Florida Statutes, and such other relief as the Court may deem just and proper.

### COUNT XX – VIOLATION OF 18 U.S.C. §1962 (CIVIL RICO)
*(Against Apex, Imitari, Alvarez, Barnes, and Jones)*

237.     Paragraphs 1 through 42 and 187 through 193 are repeated and realleged as if fully set forth herein.

238.     This action is brought for violations of Section 1962 of Title 18 of the United States Code predicated on a conspiracy to commit fraud and conversion.

239.     Apex, Imitari, Alvarez, Barnes, and Jones all violated 18 U.S.C. §1343, which provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television

communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both."

240.     Apex, Imitari, Alvarez, Barnes, and Jones committed multiple acts of deception in connection with their scheme to defraud Plaintiff. Apex, Imitari, Alvarez, Barnes, and Jones participated in the unlawful scheme in concert under the guise of a legitimate business deal. Apex, Imitari, Alvarez, Barnes, and Jones committed further multiple acts to obtain and retain the Funds. Once the Funds were converted, Apex, Imitari, Alvarez, Barnes, and Jones continued to make false representations to Plaintiff as part of their cover up of the conversion of the Funds.

241.     Title 18, Section 1962(a), of the U.S. Code provides, in pertinent part, that "[i]t shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity." Section 1962(b) provides that it "shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity." Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

242.     Title 18, Section 1964 of the U.S. Code provides, in pertinent part, that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

243.     Apex, Imitari, Alvarez, Barnes, and Jones did willfully with the intent to further the object of the conspiracy knowingly combine, conspire, confederate and agree together with the

intent to defraud, execute and cause the execution of a scheme to artifice and to defraud Plaintiff, which scheme and artifice would employ material falsehoods concerning every single aspect of the subject transaction, and to knowingly execute and cause the execution of a scheme and artifice to obtain the Funds owned by Plaintiff by means of false and fraudulent pretenses, representations, and promises related to material facts.

244.    Through the course of their relationship with Plaintiff, Apex, Imitari, Alvarez, Barnes, and Jones concocted a scheme to defraud Plaintiff and engaged in a pattern of racketeering activity, and as evidenced by the Texas Lawsuit in particular, Apex, Imitari, Alvarez, Barnes, and Jones have a history establishing a modus operandi of engaging in fraudulent schemes.

245.    Apex, Imitari, Alvarez, Barnes, and Jones' violations of Section 1964 proximately caused injury to Plaintiff, including financial injury due to their malicious and objectively outrageous conduct towards Plaintiff.

Wherefore, Plaintiff respectfully demands judgment against Apex, Imitari, Alvarez, Barnes, and Jones: (i) holding Apex, Imitari, Alvarez, Barnes, and Jones jointly and severally liable for all compensable injuries Plaintiff has suffered as a result of Apex, Imitari, Alvarez, Barnes, and Jones' outrageous conduct; (ii) awarding Plaintiff treble damages under section 18 U.S.C. §1964; (iii) awarding Plaintiff prevailing party attorney's fees and costs; and (iv) affording Plaintiff any other relief available to him under the law.

## **Demand for Jury Trial**

Plaintiff demands trial by jury on all claims so triable pursuant to Fed. R. Civ. P. 38(b).

Dated: March 11, 2021

Respectfully submitted,

Eduardo A. Maura, Esq.
Luis F. Quesada Machado, Esq.
*Attorneys for Plaintiff*

**Ayala Law, P.A.**
2490 Coral Way, 401,
Miami FL 33145.
Telephone: 305-570-2208
Email: eduardo@ayalalawpa.com

By: /s/ *Eduardo A. Maura*
        Eduardo A. Maura
        Florida Bar No. 91303