UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Case No. 1:21-cv-20975-BB

MBI SERVICES, LLC,

      Plaintiff,

vs.

APEX DISTRIBUTION LLC, et al.,

      Defendants.

## DECLARATION OF DAVID K. TILLMAN

1.      My name is David K. Tillman. I am over the age of eighteen and competent to testify. If called as a witness, I could and would testify as follows.

2.      I have been an active member in good standing of the State Bar of Michigan since 1985. My Bar license number is P37592. A copy of my Certificate of Good Standing is attached to this declaration as Exhibit A.

3.      I am admitted to practice in the United States District Court for the Eastern District of Michigan. A copy of my Certificate of Good Standing is attached to this declaration as Exhibit B.

4.      I began practicing law at one of Detroit's largest law firms, where I was elected a full shareholder. After more than ten years practicing there, I established my own law firm, Tillman & Tillman PLLC ("T&T"). I am a member of T&T and continue to practice there today. A copy of a certificate of T&T's corporate status issued by the Department of Licensing and Regulatory Affairs of the State of Michigan is attached to the declaration as Exhibit C.

5.      In late December 2020, I was retained by Apex Distribution LLC ("Apex") to assist the company in connection with a prospective joint venture between Apex and MBI Services, LLC ("MBI").

6.      On January 18, 2021, Apex and MBI executed a Joint Venture Agreement ("JVA"). The purpose of the joint venture was to purchase and sell medical supplies. The JVA was executed on behalf of Apex by Hector Alvarez, a member of Apex. A copy of the JVA is attached to this declaration as Exhibit D.

7.      The JVA provided that MBI would contribute $2,000,000.00 to Apex as working capital ("the Funds"), and Apex would use the Funds to purchase and sell medical supplies and to pay various related expenses. The JVA also provided that Apex would make periodic payments to MBI from revenue resulting from sales, and to return the Funds to MBI after the JVA was terminated.

8.      On January 20, 2021, as provided in the JVA, MBI deposited $2,000,000.00 into T&T's client trust account at Comerica Bank, where the funds were held separately from T&T's property, as required by the Michigan Rules of Professional Responsibility.

9.      On January 21 and 26, 2021, at Mr. Alvarez's direction, T&T and myself disbursed the entire amount of the Funds from his trust account as directed.

10.     The only role played by T&T and myself in the events recounted above was to represent Apex and its members as their counsel in connection with the joint venture of MBI and Apex.

11.     Neither T&T nor I executed any agreements with any of the parties involved in this lawsuit except for a retainer agreement with Apex to act as its counsel in connection with the joint venture.

12.     Neither T&T nor I have represented MBI for any purpose or in any manner.

13.     The Funds have been fully disbursed from T&T's client trust account in the manner directed by Mr. Alvarez. There are no Funds remaining in the trust account.

**I HEREBY DECLARE UNDER PENALTY OF PERJURY THAT I HAVE READ THIS DECLARATION, AND THE FACTS STATED IN IT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.**

_____
David K. Tillman

Dated: June 1, 2021

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on June 1, 2021, a true and correct copy of the foregoing was

served by CM/ECF on the attorneys listed below.

/s/ Brian S. Dervishi
Brian S. Dervishi

Eduardo A. Maura, Esq.
Luis F. Quesada Machado, Esq.
Ayala Law, P.A.
2490 Coral Way, Suite 401
Miami FL 33145
eduardo@ayalalawpa.com
lquesada@ayalalawpa.com

# Exhibit A

# State Bar of Michigan

## Certificate of Good Standing

This certifies that David K. Tillman, P37592 of Detroit, Michigan is an active member of the State Bar of Michigan in good standing.

He/She was admitted to practice in Michigan on May 30, 1985 in Wayne County and became a member of the State Bar of Michigan on May 30, 1985.

Janet K. Welch, Executive Director
March 19, 2021

# Exhibit B

# United States District Court
## Eastern District of Michigan

# CERTIFICATE OF GOOD STANDING

I, Kinikia D. Essix, Clerk of Court, certify that

# *David Kevin Tillman*

*was duly admitted to practice in this Court on 06/06/1985,*

*and is in good standing as a member of the Bar of this Court.*

*Dated at Detroit, Michigan on 03/26/2021.*

**Kinikia D. Essix**
Clerk



*Tracy Thompson*
Deputy Clerk

# Exhibit C

5/12/2021

LARA Home   Contact LARA   Online Services   News   MI.gov

**LARA Corporations Online Filing System**
Department of Licensing and Regulatory Affairs

---

ID Number: 801698268

[Request certificate]   [Return to Results]   [New search]

Summary for: **TILLMAN & TILLMAN PLLC**

The name of the DOMESTIC LIMITED LIABILITY COMPANY:   TILLMAN & TILLMAN PLLC

---

**Entity type:**   DOMESTIC LIMITED LIABILITY COMPANY

**Identification Number: 801698268**   **Old ID Number: D7058T**

---

**Date of Organization in Michigan:**   02/05/1998

---

**Purpose:** All Purpose Clause

---

**Term:**   Perpetual

---

**The name and address of the Resident Agent:**

| | |
|---|---|
| Resident Agent Name: | DAVID K TILLMAN |
| Street Address: | 3400 RUSSELL ST STE 205 |
| Apt/Suite/Other: | |
| City: | DETROIT          State: MI          Zip Code:  48207-2018 |

**Registered Office Mailing address:**

| | |
|---|---|
| P.O. Box or Street Address: | 3400 RUSSELL ST |
| Apt/Suite/Other: | STE 205 |
| City: | DETROIT          State: MI          Zip Code:  48207 |

---

**Act Formed Under:**   023-1993 Michigan Limited Liability Company Act

---

**Managed By:**

Members

---

**View filings for this business entity:**

```
ALL FILINGS
ANNUAL REPORT/ANNUAL STATEMENTS
CERTIFICATE OF CORRECTION
CERTIFICATE OF CHANGE OF REGISTERED OFFICE AND/OR RESIDENT AGENT
RESIGNATION OF RESIDENT AGENT
```

[View filings]

---

**Comments or notes associated with this business entity:**

# Exhibit D

DocuSign Envelope ID: B602D8E5-3FB8-48AA-B5E7-51D253558249

## Joint Venture Agreement

This Joint Venture and Funding Agreement is made this ___ day of January, 2021, whereby Apex Distribution LLC ("Apex"), a limited liability company duly organized and operating in the State of New Jersey, wishes to engage MBI Services LLC ("MBI"), a limited liability company duly organized and operating in the State of Florida, in various business and financial ventures.

**RECITALS**:

***WHEREAS***, Apex maintains extensive contacts and relationships throughout the Personal Protective Equipment (PPE) communities and possesses significant knowledge and expertise in various substantive areas of business in which Apex operates; and

***WHEREAS***, Apex has capabilities to identify and introduce its clients to financial institutions, lenders, fund managers, and others that are willing and able to provide loans and various lines of credit against financial instruments and to utilize other methods to monetize and invest financial instruments; and

***WHEREAS***, MBI has specific capabilities to raise significant capital for the development and financing of humanitarian medical projects aimed at stimulating crisis and disaster relief; and

***WHEREAS***, Apex and MBI desire to avail themselves of the experience, knowledge, sources of information, advice, assistance, contacts, and consultation of the other; and

***WHEREAS***, the Parties desire to work collaboratively and be bound by the execution of this Agreement for the purposes provided, and to fix and define their respective responsibilities, interests, and liabilities in connection with the performance of the aforementioned;

*NOW, THEREFORE*, in consideration of mutual covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree to be legally bound hereby, and do covenant, agree, and certify as follows.

## 1. DUTIES AND RESPONSIBILITIES OF THE PARTIES

### 1.1. Apex Distribution LLC

Apex hereby agrees to engage MBI to serve as its joint venture partner to provide financing in accordance with this Agreement. **Apex specifically desires that MBI finance the shipping, SGS reports, and customs duties costs emanating from PPE orders to the United States Government, Local and State Governments, as well as Health Care Facilities, eg, hospitals and large clinic systems.**

**Apex further agrees to pay to MBI any profit(s) earned from the parties' Joint Venture on a Five Cents ($.05) per box in consideration for MBI's Two Million ($2,000,000.00) Dollar capital contribution to the venture, for up to Apex's anticipated importation of five million (5,000,000) boxes per week (the "Weekly Delivery Schedule"). MBI shall have a right of first refusal to participate in up to 52 Weekly Deliveries so long as MBI maintains a capital contribution in place. The contribution shall be secured by a security interest in and to all inventory, receivables, chattel papers pursuant to a security agreement.**

Apex further agrees that all payments will be made payable to MBI by wire transfer or official bank draft to the bank directed by MBI under separate cover.

The Parties agree that they are to fulfill their duties under this Agreement in good faith and to the best of their abilities. On a weekly basis, Apex agrees that it shall provide MBI with all information and documents related to Apex's use of MBI's capital contribution, the Weekly Deliveries and revenues generated. Apex further agrees that it shall provide MBI with all information and resources necessary to fulfill its obligations under this Agreement. Apex agrees to indemnify, release and hold MBI harmless for all actions taken in fulfilling its duties under this Agreement, unless any such actions demonstrate bad faith.

### 1.2. MBI Medical LLC

MBIMBIFor the services rendered under this Agreement, MBI hereby agrees to contribute to the Joint Venture its expertise, knowledge, and capabilities for the mutual benefit of the Parties and to utilize its experience, sources of information, advice, assistance, and contacts during the term of this Agreement. **MBI specifically agrees to finance shipping, SGS reports, and customs duties costs emanating from PPE orders to the United States Government, Local and State Governments, as well as Health Care Facilities, eg, hospitals and large clinic systems.**

**Apex further agrees to pay to MBI any profit(s) earned from the parties' Joint Venture on a Five Cents ($.05) per box in consideration for MBI's Two Million ($2,000,000.00) capital contribution to the venture.**

The Parties agree that they are to fulfill their duties under this Agreement in good faith and to the best of their abilities. MBI agrees that it shall provide Apex with all information and resources necessary to

fulfill its obligations under this Agreement. MBI agrees to indemnify, release and hold Apex harmless for all actions taken in fulfilling its duties under this Agreement, unless any such actions demonstrate bad faith.

## 2. EFFECTIVE DATE, TERM, AND TERMINATION

### 2.1. Effective Date of the Agreement
This Agreement shall commence and become effective on the date on which it has been executed by both Parties (the "Effective Date").

### 2.2. Term of the Agreement
This Agreement shall remain in force for a period of one (1) calendar year from the Effective Date.

### 2.3. Dissolution upon Completion
Upon the completion of this Agreement as set forth herein above, all residual obligations between the Parties shall immediately cease.

### 2.4. Termination of the Agreement
MBI may terminate this Agreement by providing Apex at least thirty (30) days' written notice of its intent to terminate this Agreement. MBI may terminate this Agreement immediately (by providing written notice to Apex) in the event Apex fails to pay MBI as agreed or if there is a failure to perform as indicated in provision 1.1 of this Agreement. Upon termination of this Agreement for any reason, Apex shall (i) return to MBI, MBI's capital contribution its entirety as set forth in provision 3.2, and (ii) pay all revenues owed to MBI per provision 1.2 of this Agreement forthwith. Nothing in this Agreement shall prevent a party from enforcing its rights by such remedies as may be available in lieu of termination.

## 3. PERFORMANCE

### 3.1. MBI's Performance Obligation.
MBI shall make wire transfer of its Two Million ($2,000,000.00) Dollar capital contribution ("the seed money") into Apex's counsel's IOLTA account within one (1) business day of the full execution of this Agreement – with Apex's counsel to provide MBI with the banking information under separate cover. Upon receipt, Apex's counsel shall provide written confirmation of receipt of the funds to MBI.

### 3.2. Apex's Performance Obligations.
Apex shall use of the seed money for the following purposes:

- Payment for airplane costs for product shipment
- Payment for product inspection by SGS
- Payment of customs and associated tariffs
- Payment of product shipment insurance expenses
- Payment for Letter of Credit to facilitate manufacturer's release of product

In addition, Apex shall make periodic payment to MBI as identified in ¶1.2 within two (2) business days of purchaser's product inspection and approval – with payment to be made to an account as directed by MBI under separate cover. Furthermore, Apex shall make wire transfer of the

investment amount principal to MBI within 10 business days of the termination of this Agreement.

## 4. NOTICES

All notices, consents, and demands under this Agreement shall be in writing and may be delivered personally, by email, sent by telegram, telex, air courier, or facsimile or may be forwarded by first-class registered or certified mail to the address for each party set forth below, or to such address as each party may from time to time specify by notice. Any notice delivered or sent by telegram, telex, or facsimile shall be deemed to have been given and received on the business day next following the date of delivery, but only if written proof of delivery can be produced. Any notice mailed as aforesaid shall be deemed to have been given and received on the fifth (5th) business day following the date it is posted, providing that if between the time of mailing and the actual receipt of the notice there shall be a mail strike, slowdown, labor dispute or other condition which might affect delivery of the notice by the mail, then the notice shall be effective only if actually delivered.

Apex Distribution LLC
41 Vreeland Ave, Ste 22
Totowa, NJ 07512
Attn: Mr. Hector Alvarez

If via email:
alvarez@apexdistributions.com
wbarnes@yahoo.com
zktillman@msn.com

MBI Services LLC
368 Minorca Ave
Coral Gables, Florida 33134
Attn: Mr. Fernando Sandoval

If via email:
jgm@gmilaw.com

## 5. FORCE MAJEURE

. Any delay or failure of Apex to perform its obligations under this Agreement will be excused to the extent that the delay or failure was caused directly by an event beyond Apex's control, without Apex's fault or negligence and that by its nature could not have been foreseen by Apex or, if it could have been foreseen, was unavoidable (which events may include natural disasters, embargoes, explosions, riots, wars, acts of terrorism, strikes, labor stoppages or slowdowns or other industrial disturbances, and shortage of adequate power or transportation facilities). In the event Apex claims delay or excuse on the basis indicated in the provision, Apex shall immediately provide written notice to MBI.

## 6. SEVERABILITY

If any provision of this Agreement, or the application thereof to any person or circumstance, shall for any reason or to any extent be invalid or unenforceable, such invalidity or unenforceability shall not in any manner affect or render invalid or unenforceable the remainder of this Agreement, and the application of that provision to other persons or circumstances shall not be affected but, rather, shall be enforced to the extent permitted by law.

## 7. ASSIGNABILITY

Neither this Agreement, nor any rights or obligations conferred hereunder may be assigned in whole or in part by either party without obtaining the prior written consent of the other party.

## 8. SUCCESSORS

This Agreement shall extend to and be binding upon the heirs, personal representatives, successors, and assigns of the Parties hereto.

### 9. WARRANTY OF AUTHORITY

The persons executing and delivering this Agreement on behalf of the Parties represent and warrant that each of them is duly authorized to do so and that the execution of this Agreement is the lawful and voluntary act of the Parties.

### 10.    MODIFICATIONS

It is agreed by and between the Parties hereto that this Agreement may be modified only by a written instrument signed by all the Parties.

### 11. WAIVER OF BREACH

The failure of either party to enforce for any time or for any period any of the provisions of this Agreement shall not be construed as a waiver of the right of such party thereafter to enforce each such provision.

### 12. GOVERNING LAW

This Agreement, and any disputes hereunder, shall be governed by the laws of the United States and the State of Florida. Venue for any action brought to enforce or interpret the terms of this Agreement shall be in the courts of Miami-Dade County, Florida.

### 13. COSTS AND ATTORNEY FEES

In the event that either party institutes legal action for the enforcement of any right, obligation, provision, or covenant of this Agreement, the prevailing party shall be entitled to its reasonable attorney fees and costs associated with the action.

### 14. COUNTERPARTS

This Agreement may be executed simultaneously in two or more counterparts, all of which together shall constitute one and the same instrument and when so signed shall be deemed to bear the date first written below.

### 15. LANGUAGE AND TRANSLATIONS

This Agreement is written in the English language and executed in two counterparts, each of which shall be deemed an original. The English language text of the Agreement shall prevail over any translation thereof.

### 16. CONFIDENTIALITY

Except as required by law or as reasonably required in order to enable and execute the transactions contemplated herein, the Parties agree to maintain the confidentiality of all information and data relating to the business of the Parties and each other, including, without limitation, economic, financial and/or

personal information, disclosed, directly or indirectly, or disclosed by visual inspection, and shall not disclose such information and data to a third party without the prior written consent of the other Parties

## 17. TAX CONSEQUENCES TO THE PARTIES

Neither Apex nor MBI makes any representations regarding the tax consequences of this Agreement, if any, in any jurisdiction covered by this Agreement. It is agreed by the Parties hereto that each accepts its own liability for taxes, imposts, levies or charges that may arise because of any activity under this Agreement, without any right of contribution or indemnification by or from the other party.

## 18. ENTIRE AGREEMENT

All the terms and conditions of the Agreement between the parties are contained herein, and no representations or inducements have been made other than those specifically set forth. This Agreement contains the entire understanding of the Parties relating to the subject matter of this Agreement and supersedes all other prior written or oral agreements, understandings or arrangements between the Parties relating to the subject matter hereof. The Parties agree that by entering into this Agreement, they do so voluntarily and do not rely and have not relied on any statements or representations not contained in this Agreement.

## 19. FACSIMILE SIGNATURES

Electronically transmitted facsimile signatures on this Agreement shall serve as originals for all purposes.

## 20. COLLATERAL AND GUARANTEES

The Agreement and Apex's obligations hereunder shall be secured by a security interest in and to all inventory, receivables, chattel papers pursuant to a security agreement dated of even date herewith in form substantially in the form set forth as Exhibit A and the personal guarantee attached hereto as Exhibit B.

*IN WITNESS WHEREOF*, the parties hereto have executed this Joint Venture Agreement the 12 day of January 2021.

APEX DISTRIBUTION LLC

_____

Hector Alvarez
Its:  Managing Member

MBI SERVICES LLC

┌─ DocuSigned by:
│
│  _____
└─ 3DD8EC6766EB4AE...

Fernando Sandoval
Its:  _____Managing Member_____

DocuSign Envelope ID: B602DB5-13F03-42AA-B557-51D253E5B249

## Exhibit A
## Personal Guarantee of Payment

This Guaranty of Payment (this "<u>Guaranty</u>") is made as of this ___ day of January, 2021, by HECTOR ALVAREZ individually (the "<u>Guarantor</u>"), in favor of MBI Services LLC ("<u>MBI</u>").

## RECITALS

**Apex Distribution LLC,**  (the "<u>Apex</u>") has requested and MBI has agreed to make a capital contribution  in the amount of Two Million Dollars ($2,000,000) ("Contribution") as evidenced by that certain Joint Venture Agreement ("JVA") of even date herewith. As a condition precedent to MBI making the Contribution, MBI has required Guarantor to execute and deliver this Guaranty.

## AGREEMENTS

Guarantor will receive a material benefit from MBI making the Contribution. For good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and in order to induce MBI to make Contribution to the joint venture, Guarantor hereby guarantees to MBI the prompt and full payment of the indebtedness and obligations described below in this Guaranty (collectively called the "<u>Guaranteed Obligations</u>"), this Guaranty being upon the following terms and conditions:

Section 1.        Guaranty of Payment.

Guarantor hereby unconditionally and irrevocably guarantees to MBI the punctual payment when due, whether by lapse of time, by acceleration of maturity, or otherwise, of all revenues, principal, interest (including interest accruing after maturity and after the commencement of any bankruptcy or insolvency proceeding by or against Apex, whether or not allowed in such proceeding), prepayment premiums, fees, late charges, costs, expenses, indemnification indebtedness, and other sums of money now or hereafter due and owing, or which Apex is obligated to pay, pursuant to the terms of the JVA, any application, agreement, note or other document executed and delivered by Apex in connection with the JVA, including, without limitation, any letter of credit issued by Apex in connection with the JVA, as the same may from time to time be amended, supplemented, restated or otherwise modified (collectively, the "<u>Indebtedness</u>").  The Indebtedness includes all reasonable costs and expenses incurred by MBI in seeking to enforce it's rights and remedies with respect to the Indebtedness, and to protect, defend, maintain or enforce it's liens or security interests, including, without limitation, collection costs, default rates of interest, reasonable attorneys' fees and costs at trial and appellate levels and related costs, and costs of alternative dispute resolution, whether or not suit is filed or other proceedings are initiated thereon.  This Guaranty covers the Indebtedness presently outstanding and the Indebtedness arising subsequent to the date hereof, including all amounts advanced by MBI in stages or installments.  The guaranty of Guarantors as set forth in this Section is a continuing guaranty of payment and not a guaranty of collection.

The foregoing obligations guaranteed under this Section are defined as the "<u>Guaranteed Payment Obligations</u>".  The Guaranteed Payment Obligations are included as part of the Guaranteed Obligations for all purposes of this Guaranty.

Section 2.        Guaranty of Performance.

Guarantor hereby unconditionally and irrevocably guarantee to MBI the complete performance when due of all other Obligations of Apex under the JVA, including, without limiting the generality of the foregoing, all such Obligations of Apex to duly and punctually perform and observe all other terms, covenants and conditions of the JVA.

The foregoing obligations guaranteed under this Section are defined as the "Guaranteed Performance Obligations." The Guaranteed Performance Obligations are included as part of the Guaranteed Obligations for all purposes of this Guaranty. To the extent MBI is obligated to provide to Apex written notice of a Default and opportunity to cure, MBI shall simultaneously provide the same written notice and opportunity to cure to Guarantor.

The liability and obligations under this Section shall not be limited or restricted by the existence of, or any terms of, the guaranty of payment under Section 1.

Section 3.     Primary Liability of Guarantor.

(a)     This Guaranty is an absolute, irrevocable and unconditional guaranty of payment and performance, and Guarantor shall be liable for the payment and performance of the Guaranteed Obligations as a primary obligor. This Guaranty shall be effective as a waiver of, and Guarantor hereby expressly waives, any right to which Guarantor may otherwise have been entitled, whether existing under statute, at law or in equity, to require MBI to take prior recourse or proceedings against any collateral, security or person. It shall not be necessary for MBI, in order to enforce such payment or performance by Guarantor, first to institute suit or pursue or exhaust any rights or remedies against Apex or other person liable on such indebtedness or performance, or to enforce any rights against any security given to secure such indebtedness or for such performance, or to join Apex or any other person liable for the payment or performance of the Guaranteed Obligations or any part thereof in any action to enforce this Guaranty, or to resort to any other means of obtaining payment or performance of the Guaranteed Obligations provided, however, that nothing herein contained shall prevent MBI from suing on the JVA or exercising any other right under the JVA.

(b)     Suit may be brought or demand may be made against Apex or against any or all parties who have signed this Guaranty or any other guaranty covering all or any part of the Guaranteed Obligations, or against any one or more of them, separately or together, without impairing the rights of MBI against any party hereto. Any time that MBI is entitled to exercise its rights or remedies hereunder, it may in its discretion elect to demand payment and/or performance. If MBI elects to demand performance, it shall at all times thereafter have the right to demand payment until all of the Guaranteed Obligations have been paid and performed in full. If MBI elects to demand payment, it shall at all times thereafter have the right to demand performance until all of the Guaranteed Obligations have been paid and performed in full.

Section 4.     Certain Agreements and Waivers by Guarantor.

(a)     Guarantor agrees that neither MBI's rights or remedies nor Guarantor's obligations under the terms of this Guaranty shall be released, diminished, impaired, reduced or affected by any one or more of the following events, actions, facts, or circumstances, and the liability of Guarantor under this Guaranty shall be absolute, unconditional and irrevocable irrespective of:

(i)     any limitation on the liability of, or recourse against, any other person in the JVA or arising under any law;

(ii)     any claim or defense that this Guaranty was made without consideration or is not supported by adequate consideration or that the obligations of Guarantor hereunder exceed or are more burdensome than those of Apex under the JVA;

(iii)     the taking or accepting of any other security or guaranty for, or right of recourse with respect to, any or all of the Guaranteed Obligations;

(iv)     the operation of any laws (other than statutes of limitation) regarding the limitation of actions;

(v)     any homestead exemption or any other exemption under applicable law;

(vi)     any release, surrender, abandonment, exchange, alteration, sale or other disposition, subordination, deterioration, waste, failure to protect or preserve, impairment, or loss of, or any failure to create or perfect any lien or security interest with respect to, or any other dealings with, any collateral or security at any time existing or purported, believed or expected to exist in connection with any or all of the Guaranteed Obligations, or any impairment of Guarantor's recourse against any person or collateral;

(vii)     whether express or by operation of law, any partial release of the liability of Guarantor hereunder (except to the extent paid, performed or expressly so released) or any complete or partial release of Apex or any other person liable, directly or indirectly, for the payment or performance of any or all of the Guaranteed Obligations;

(viii)     the insolvency, bankruptcy, dissolution, liquidation, termination, receivership, reorganization, merger, consolidation, change of form, structure or ownership, sale of all assets, or lack of corporate, partnership or other power of Apex or any other person at any time liable for the payment of any or all of the Guaranteed Obligations;

(ix)     either with or without notice to or consent of Guarantor, any renewal, extension, modification, supplement, subordination or rearrangement of the terms of any or all of the Guaranteed Obligations and/or the JVA, including material alterations of the terms of payment (including changes in maturity date(s) and interest rate(s) or performance (including changes with respect to construction of the Improvements) or any other terms thereof, or any waiver, termination, or release of, or consent to departure from, the JVA or any other guaranty of any or all of the Guaranteed Obligations, or any adjustment, indulgence, forbearance, or compromise that may be granted from time to time by MBI to Apex or any other person at any time liable for the payment or performance of any or all of the Guaranteed Obligations;

(x)     any neglect, lack of diligence, delay, omission, failure, or refusal of MBI to take or prosecute (or in taking or prosecuting) any action for the collection or enforcement of any of the Guaranteed Obligations, or to foreclose or take or prosecute any action to foreclose (or in foreclosing or taking or prosecuting any action to foreclose) upon any security therefor, or to exercise (or in exercising) any other right or power with respect to any security therefor, or to take or prosecute (or in taking or prosecuting) any action in connection with the JVA, or any failure to sell or otherwise dispose of in a commercially reasonable manner any collateral securing any or all of the Guaranteed Obligations;

(xi)    any failure of MBI to notify Guarantor of any renewal, extension, modification, supplement, subordination, or assignment of the Guaranteed Obligations or any part thereof, or of the JVA, or of any release of or change in any security, or of the occurrence or existence of any Event of Default, or of any other action taken or refrained from being taken by MBI against Apex or any security or other recourse, or of any new agreement between MBI and Apex, it being understood that MBI shall not be required to give Guarantor any notice of any kind under any circumstances with respect to or in connection with the Guaranteed Obligations, and Guarantor shall be responsible for obtaining for itself information regarding Apex, including any changes in the business or financial condition of Apex, and Guarantor acknowledges and agrees that MBI shall have no duty to notify Guarantor of any information which MBI may have concerning Apex;

(xii)    the existence of any claim, counterclaim, set-off or other right that Guarantors may at any time have against Apex, MBI, or any other person, whether or not arising in connection with this Guaranty, the JVA, the Security Agreement or any other agreement; provided, however, that the foregoing shall not be deemed a waiver of Guarantor's right to assert any compulsory counterclaim maintained in a court of the United States or the State of Florida if such counterclaim is compelled under local law or procedure;

(xiii)    the unenforceability of all or any part of the Guaranteed Obligations against Apex, whether because the Guaranteed Obligations exceed the amount permitted by law or violate any usury law, or because the persons creating the Guaranteed Obligations acted in excess of their authority, or because of a lack of validity or enforceability of or defect or deficiency in the JVA;

(xiv)    any order, ruling or plan of reorganization emanating from proceedings under Title 11 of the United States Code with respect to Apex or any other person, including any extension, reduction, composition, or other alteration of the Guaranteed Obligations, whether or not consented to by MBI, or any action taken or omitted by MBI in any such proceedings, including any election to have MBI's claim allowed as being secured, partially secured or unsecured, any extension of credit by MBI in any such proceedings or the taking and holding by MBI of any security for any such extension of credit;

(xv)    Intentionally Omitted

(xvi)    any early termination of any of the Guaranteed Obligations; or

(xvii)    MBI's enforcement or forbearance from enforcement of the Guaranteed Obligations on a net or gross basis.

(b)    In the event any payment by Apex or any other person to MBI is held to constitute a preference, fraudulent transfer or other voidable payment under any bankruptcy, insolvency or similar law, or if for any other reason MBI is required to refund such payment or pay the amount thereof to any other party, such payment by Apex or any other party to MBI shall not constitute a release of Guarantor from any liability hereunder, and this Guaranty shall continue to be effective or shall be reinstated (notwithstanding any prior release, surrender or discharge by MBI of this Guaranty or of Guarantor), as the case may be, with respect to, and this Guaranty shall apply to, any and all amounts so refunded by MBI or paid by MBI to another person (which amounts shall constitute part of the Guaranteed Obligations), and any interest paid by MBI and any reasonable attorneys' fees, costs and expenses paid or incurred by MBI in connection with any such event.

(c)     It is the intent of Guarantors and MBI that the obligations and liabilities of Guarantors hereunder are absolute, irrevocable and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a guarantor.

(d)     Guarantors' obligations shall not be affected, impaired, lessened or released by loans, credits or other financial accommodations now existing or hereafter advanced by MBI to Apex in excess of the Guaranteed Obligations.   All payments, repayments and prepayments of the contribution, whether voluntary or involuntary, received by MBI from Apex, any other person or any other source (other than from Guarantors pursuant to a demand by MBI hereunder), and any amounts realized from any collateral for the contribution, shall be deemed to be applied first to any portion of the contribution which is not covered by this Guaranty, and last to the Guaranteed Obligations, and this Guaranty shall bind Guarantors to the extent of any Guaranteed Obligations that may remain owing to MBI.  MBI shall have the right to apply any sums paid by Guarantor to any portion of the Contribution in MBI's sole and absolute discretion.

(e)     If acceleration of the time for payment of any amount payable by Apex under the JVA or the security agreement is stayed or delayed by any law or tribunal, all such amounts shall nonetheless be payable by Guarantor on demand by MBI.

(f)     Guarantors hereby waive and agree not to assert or take advantage of (i) any right or claim of right to cause a marshalling of any of Apex's assets or the assets of any other party now or hereafter held as security for the Indebtedness; (ii) the defense of laches in any action hereunder or for the payment of the Indebtedness and performance of any obligation hereby guaranteed; (iii) any defense that may arise by reason of the incapacity, lack of authority, death or disability of Guarantor, any other guarantor of the Contribution, or Apex or any other person or entity, or the voluntary or involuntary dissolution of Apex, or the failure of MBI to file or enforce a claim against the estate (either in administration, bankruptcy, or any other proceeding) of Apex or any other person or entity; (iv) any defense based on the failure of MBI to give notice of the existence, creation, or incurring of any new or additional indebtedness or obligation, or of any action or nonaction on the part of any other person whomsoever, or any modification of the terms of the JVA, or the Indebtedness, in connection with any obligation hereby guaranteed; (v) any defense based upon an election of remedies by MBI which destroys or otherwise impairs any subrogation rights of Guarantor or any other guarantor of the Contribution or the right of Guarantor to proceed against Apex or any other guarantor for reimbursement, or both; (vi) any defense based upon failure of MBI to commence an action against Apex; (vii) any defense based upon acceptance of this Guaranty by MBI; (viii) any defense based upon the invalidity or unenforceability of any of the JVA; (ix) any defense based upon any complete or partial release of liability contained in any of the JVA; (x) any defense based upon any transfer by Apex of all or any part of the collateral for the Contribution; (xi) any defense based upon the failure of MBI to perfect any security or to extend or renew the perfection of any security; and (xii) any other legal or equitable defenses whatsoever to which Guarantor might otherwise be entitled.

Section 5.    Subordination.

If, for any reason whatsoever, Apex is now or hereafter becomes indebted to Guarantors:

(a)     such indebtedness and all interest thereon and all liens, security interests and rights now or hereafter existing with respect to property of Apex securing such indebtedness shall, at all times, be subordinate in all respects to the Guaranteed Obligations and to all liens, security interests and rights now or hereafter existing to secure the Guaranteed Obligations;

(b)     Guarantors shall not be entitled to enforce or receive payment, directly or indirectly, of any such indebtedness of Apex to Guarantor until the Guaranteed Obligations have been fully and finally paid and performed, except in the ordinary cause of business;

(c)     Guarantors hereby assign and grant to MBI a security interest in all such indebtedness and security therefor, if any, of Apex to Guarantor now existing or hereafter arising, including any dividends and payments pursuant to debtor relief or insolvency proceedings referred to below.  In the event of receivership, bankruptcy, reorganization, arrangement or other debtor relief or insolvency proceedings involving Apex as debtor, MBI shall have the right to prove its claim in any such proceeding so as to establish its rights hereunder and shall have the right to receive directly from the receiver, trustee or other custodian (whether or not an Event of Default shall have occurred or be continuing under the JVA), dividends and payments that are payable upon any obligation of Apex to Guarantor now existing or hereafter arising, and to have all benefits of any security therefor, until the Guaranteed Obligations have been fully and finally paid and performed.  If, notwithstanding the foregoing provisions, Guarantor should receive any payment, claim or distribution that is prohibited as provided above in this Section, Guarantor shall pay the same to MBI immediately, Guarantor hereby agreeing that it shall receive the payment, claim or distribution in trust for MBI and shall have absolutely no dominion over the same except to pay it immediately to MBI; and

(d)     Guarantors shall promptly upon request of MBI from time to time execute such documents and perform such acts as MBI may reasonably require to evidence and perfect its interest and to permit or facilitate exercise of its rights under this Section, including execution and delivery of proofs of claim, further assignments and security agreements, and delivery to MBI of any promissory notes or other instruments evidencing indebtedness of Apex to Guarantor.

      Section 6.     Other Liability of Guarantor or Apex.

If Guarantors is or becomes liable, by endorsement or otherwise, for any indebtedness owing by Apex to MBI other than under this Guaranty, such liability shall not be in any manner impaired or affected hereby, and the rights of MBI hereunder shall be cumulative of any and all other rights that MBI may have against Guarantors.  If Apex is or becomes indebted to MBI for any indebtedness other than or in excess of the Guaranteed Obligations, any payment received or recovery realized upon such other indebtedness of Apex to MBI may be applied to such other indebtedness.  This Guaranty is independent of (and shall not be limited by) any other guaranty now existing or hereafter given.  Further, Guarantors' liability under this Guaranty is in addition to any and all other liability Guarantor may have in any other capacity to MBI.

      Section 7.     MBI Assigns; Disclosure of Information.

This Guaranty is for the benefit of MBI and MBI's successors and assigns, and in the event of an assignment of the Guaranteed Obligations, or any part thereof, the rights and benefits hereunder, to the extent applicable to the Guaranteed Obligations so assigned, may be transferred with such Guaranteed Obligations.  Guarantors waive notice of any transfer or assignment of the Guaranteed Obligations or any part thereof.  MBI may sell or offer to sell the Contribution or interests therein to one or more assignees or participants.  Guarantors shall execute, acknowledge and deliver

DocuSign Envelope ID: B602D9F1-3528-48AA-B5E7-51D253E5931E

any and all instruments reasonably requested by MBI in connection therewith, and to the extent, if any, specified in any such assignment or participation, such assignee(s) or participant(s) shall have the same rights and benefits with respect to the JVA as such person(s) would have if such person(s) were MBI hereunder. MBI may disclose to any such assignee or participant or prospective assignee or participant, to MBI's affiliates, to any regulatory body having jurisdiction over MBI and to any other parties as necessary or appropriate in MBI's reasonable judgment, any information MBI now has or hereafter obtains pertaining to the Guaranteed Obligations, this Guaranty, or Guarantors, including information regarding any security for the Guaranteed Obligations or for this Guaranty, and/or credit or other information on Guarantor and/or any other person liable, directly or indirectly, for any part of the Guaranteed Obligations.

Section 8.    Binding Effect; Joint and Several Liability.

This Guaranty is binding not only on Guarantor, but also on Guarantors' successors and assigns. If this Guaranty is signed by more than one person, then all of the obligations of Guarantors arising hereunder shall be jointly and severally binding on each of the undersigned, and their respective successors and assigns, and the term "Guarantors" shall mean all of such persons and each of them individually.

Section 9.    Governing Law.

The validity, enforcement, and interpretation of this Guaranty, shall for all purposes be governed by and construed in accordance with the laws of the State of Florida and applicable United States federal law, and is intended to be performed in accordance with, and only to the extent permitted by, such laws. All obligations of Guarantors hereunder are payable and performable at the place or places where the Guaranteed Obligations are payable and performable. This Guaranty is an agreement executed under seal. If any Guarantor is a corporation, the designation "(SEAL)" on this Guaranty shall be effective as the affixing of such Guarantor's corporate seal physically to this Guaranty.

Section 10.    Invalidity of Certain Provisions.

If any provision of this Guaranty or the application thereof to any person or circumstance shall, for any reason and to any extent, be declared to be invalid or unenforceable, neither the remaining provisions of this Guaranty nor the application of such provision to any other person or circumstance shall be affected thereby, and the remaining provisions of this Guaranty, or the applicability of such provision to other persons or circumstances, as applicable, shall remain in effect and be enforceable to the maximum extent permitted by applicable law.

Section 11.    Costs and Expenses of Enforcement.

Guarantors agree to pay to MBI all reasonable costs and expenses incurred by MBI in seeking to enforce MBI's rights and remedies under this Guaranty, including court costs, costs of alternative dispute resolution and reasonable attorneys' fees and costs, whether or not suit is filed or other proceedings are initiated hereon. All such reasonable costs and expenses incurred by MBI shall constitute a portion of the Guaranteed Obligations hereunder, shall be subject to the provisions hereof with respect to the Guaranteed Obligations and shall be payable by Guarantor within ten (10) days of written demand by MBI.

DocuSign Envelope ID: B602D9F1-3528-424A-B5E7-51D253E59249

Section 12.    No Usury.

It is not the intention of MBI or Guarantors to obligate Guarantors to pay interest in excess of that lawfully permitted to be paid by Guarantor under applicable law. Should it be determined that any portion of the Guaranteed Obligations or any other amount payable by Guarantor under this Guaranty constitutes interest in excess of the maximum amount of interest that Guarantors, in Guarantors' capacity as guarantor, may lawfully be required to pay under applicable law, the obligation of Guarantors to pay such interest shall automatically be limited to the payment thereof in the maximum amount so permitted under applicable law. The provisions of this Section shall override and control all other provisions of this Guaranty and of any other agreement between Guarantor and MBI.

Section 13.    Representations, Warranties, and Covenants of Guarantor.

Until the Guaranteed Obligations are paid and performed in full and each and every term, covenant and condition of this Guaranty is fully performed, Guarantors hereby represent, warrant, and covenants that: (a) Guarantors have a financial interest in Apex and will derive a material and substantial benefit, directly or indirectly, from the making of the Contribution to Apex and from the making of this Guaranty by Guarantors; (b) this Guaranty is duly authorized and valid, and is binding upon and enforceable against Guarantors; (c) intentionally omitted (d) unless Guarantors are natural persons, Guarantors are duly organized, validly existing, and in good standing under the laws of the state of its organization and has full power and authority to enter into and perform this Guaranty; (e) except as previously disclosed to MBI in writing, there is no litigation pending or, to the knowledge of Guarantor, threatened by or before any tribunal against or affecting Guarantors; (f) all financial statements and information heretofore furnished to MBI by Guarantors do, and all financial statements and information hereafter furnished to MBI by Guarantors will, fully and accurately, in all material aspects, present the condition (financial or otherwise) of Guarantors as of their dates and the results of Guarantors' operations for the periods therein specified, and, since the date of the most recent financial statements of Guarantors heretofore furnished to MBI, no material adverse change has occurred in the financial condition of Guarantors, nor, except as heretofore disclosed in writing to MBI, has Guarantors incurred any material liability, direct or indirect, fixed or contingent; (g) after giving effect to this Guaranty, Guarantors are solvent, are not engaged or about to engage in business or a transaction for which the property of Guarantors is an unreasonably small capital, and does not intend to incur or believe that it will incur debts that will be beyond its ability to pay as such debts mature; (h) Guarantors have read and fully understand the provisions contained in the JVA, and the security agreement. No agreement or other document, certificate or statement (including, without limitation, any financial statements provided to MBI by Guarantors) furnished to MBI by or on behalf of Guarantors contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained herein and therein not misleading. Guarantors acknowledge that all such statements, representations and warranties shall be deemed to have been relied upon by MBI as an inducement to make the Contribution to Apex. Guarantors' representations, warranties and covenants are a material inducement to MBI to enter into the JVA shall survive the execution hereof and any bankruptcy, foreclosure, transfer of security or other event affecting Apex, Guarantors, any other party, or any security for all or any part of the Guaranteed Obligations.

Section 14.     Notices.

All notices from the Guarantor to MBI and MBI to Guarantor required or permitted by any provision of this Guaranty shall be in writing and sent by registered or certified mail or nationally recognized overnight delivery service and addressed as follows:

TO MBI:

MBI Services LLC
Attn: Fernando Sandoval
jnandosw@gmail.com

Copy to:

Jorge Garcia-Menocal, Esq.
Judiciary Square
368 Minorca Ave.
Coral Gables, FL 33134
T: (305) 400-9652
F: (305) 520-0195
C: (305) 898-3577
E-mail: jgm@gmilaw.com

TO GUARANTOR:

Apex Distribution LLC

Attn:    Hector Alvarez
         Terry Barnes
halvarez@apexdistributions.com
twbarnes@yahoo.com

Copy to:

David K. Tillman, Esq.
3400 Russell St, Ste 205
Detroit, MI 48207
T: (313) 832-6000
dktillman@msn.com

_____
_____

Such addresses may be changed by such notice to the other party.  Notice given as hereinabove provided shall be deemed given on the date of its deposit in the United States Mail and, unless sooner actually received, shall be deemed received by the party to whom it is addressed on the third calendar day following the date on which said notice is deposited in the mail, or if a courier system is used, on the date of delivery of the notice.

Section 15.     Cumulative Rights.

All of the rights and remedies of MBI under this Guaranty and the JVA are cumulative of each other and of any and all other rights at law or in equity, and the exercise by MBI of any one or more of such rights and remedies shall not preclude the simultaneous or later exercise by MBI of any or all such other rights and remedies.  No single or partial exercise of any right or remedy shall exhaust it or preclude any other or further exercise thereof, and every right and remedy may be

exercised at any time and from time to time. No failure by MBI to exercise, nor delay in exercising, any right or remedy shall operate as a waiver of such right or remedy or as a waiver of any Event of Default. No notice to or demand on Guarantors in any case shall of itself entitle Guarantors to any other or further notice or demand in similar or other circumstances. No provision of this Guaranty or any right or remedy of MBI with respect hereto, or any default or breach, can be waived, nor can this Guaranty or Guarantor be released or discharged in any way or to any extent, except specifically in each case by a writing intended for that purpose (and which refers specifically to this Guaranty) executed and delivered by MBI to Guarantor.

Section 16.    Term of Guaranty.

This Guaranty shall continue in effect until all the Guaranteed Obligations and all of the obligations of Guarantors to MBI under this Guaranty are fully and finally paid, performed and discharged and are not subject to any bankruptcy preference period or any other disgorgement.

Section 17.    Subrogation.

Guarantors shall not have any right of subrogation under any of the JVA or any right to participate in any security for the Guaranteed Obligations or any right to reimbursement, exoneration, contribution, indemnification or any similar rights, until the Guaranteed Obligations have been fully and finally paid, performed and discharged in accordance with Section 16 above, and Guarantors hereby waive all of such rights.

Section 18.    Intentionally Omitted.

Section 19.    No Transfer of Assets.

Guarantors shall not, during the term of the Contribution, transfer any material portion of his assets unless such transfer is in the ordinary course of Guarantors' business, for fair market value and such fair market value is given to Guarantor, in his sole name, and such transfer will not have a material adverse effect on the financial condition of Guarantors and/or their ability to perform his obligations hereunder, as determined by MBI in its sole and absolute discretion.

Section 20.    Intentionally Omitted.

Section 21.    Time of Essence.

Time shall be of the essence in this Guaranty with respect to all of Guarantor's obligations hereunder.

Section 22.    Entire Agreement; Counterparts; Construction.

This Guaranty embodies the entire agreement between MBI and Guarantors with respect to the guaranty by Guarantors of the Guaranteed Obligations. This Guaranty supersedes all prior agreements and understandings, if any, with respect to the guaranty by Guarantors of the Guaranteed Obligations. This Guaranty shall be effective upon execution by Guarantors and delivery to MBI. This Guaranty may not be modified, amended or superseded except in a writing signed by MBI and Guarantors referencing this Guaranty by its date and specifically identifying the portions hereof that are to be modified, amended or superseded. This Guaranty has been executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which

constitute, collectively, one agreement. As used herein, the words "include" and "including" shall be interpreted as if followed by the words "without limitation."

Section 23.   Forum.

Guarantors hereby irrevocably submit generally and unconditionally for itself and in respect of its property to the jurisdiction of any state court or any United States federal court sitting in **Miami-Dade** County, Florida. Guarantors hereby irrevocably waive, to the fullest extent permitted by law, any objection that Guarantor may now or hereafter have to the laying of venue in any such court and any claim that any such court is an inconvenient forum. Guarantors hereby agree and consent that, in addition to any methods of service of process provided for under applicable law, all service of process in any such suit, action or proceeding in any state court or any United States federal court sitting in the state specified in the governing law section of this Guaranty may be made by certified or registered mail, return receipt requested, directed to Guarantors at their addresses for notice set forth in this Guaranty, or at a subsequent address of which MBI received actual notice from Guarantor in accordance with the notice section of this Guaranty, and service so made shall be complete five (5) days after the same shall have been so mailed. Nothing herein shall affect the right of MBI to serve process in any manner permitted by law or limit the right of MBI to bring proceedings against Guarantors in any other court or jurisdiction.

Section 24.   **WAIVER OF JURY TRIAL.**

**GUARANTORS AND MBI HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT ANY MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HEREON OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS GUARANTY AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR MBI ENTERING INTO THIS AGREEMENT.**

THE LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

**IN WITNESS WHEREOF**, Guarantor has duly executed this under seal Guaranty as of the date first written above.

Witnesses:                                                          **GUARANTOR:**

_Amilcar Y. Rosa_

Print Name:                                                        Hector Alvarez
                                                                   , individually

_Loeyla Perdomo_

Print Name:

STATE OF NEW JERSEY)
                                    )SS:
COUNTY OF PASSAIC        )

     The foregoing instrument was acknowledged before me this _18_ day of _January_, 2021, by _Hester Alvarez_, individually. He is personally known to me or produced a ___NJ___ driver's license as identification.

 

NOTARY PUBLIC
Print Name: _Jedsy J. Torres_
My Commission Expires: _01-07-2025_

JEDSY J TORRES
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES: JANUARY 7, 2025

DocuSign Envelope ID: B602D2F1-3528-43AA-B5E7-51D253E5926B

**Exhibit B**
**Security Agreement**

This Security Agreement (the "Agreement") is entered into as of ___1/18___, 2021 between Apex Distribution LLC (the "Grantor") and MBI Medical LLC (the "MBI").

WHEREAS, the Grantor has entered into that certain joint venture agreement (the "JVA") with MBI dated as of ___Jan 18, 2021___;

WHEREAS, it is a condition precedent to the MBI making any loans to the Grantor that the Grantor execute and deliver to the MBI this Security Agreement; and

WHEREAS, the Grantor wishes to grant a security interest in favor the MBI as herein provided.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    Definitions.

(a)    Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the JVA;

(b)    Unless otherwise specified herein, all references to Sections and Schedules herein are to Sections and Schedules of this Agreement.

(c)    Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

(d)    For purposes of this Agreement, the following terms shall have the following meanings:

"**Collateral**" has the meaning set forth in ***Section*** 2

"**Default Notice**" has the meaning set forth in the JVA

**"Event of Default"** has the meaning set forth in the JVA.

**"First Priority"** means, with respect to any lien and security interest purported to be created in any Collateral pursuant to this Agreement, such lien and security interest is the most senior lien to which such Collateral is subject (subject only to liens permitted under the JVA and this Agreement).

**"Proceeds"** means "proceeds" as such term is defined in section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends, price received or other income from the Collateral, collections thereon or distributions with respect thereto.

**"Secured Obligations"** has the meaning set forth in *Section 3*.

**"UCC"** means the Uniform Commercial Code as in effect from time to time in the State of California or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2.    <u>Grant of Security Interest</u>. The Grantor hereby pledges and grants to the MBI, and hereby creates a continuing First Priority lien and security interest in favor of the MBI in and to all of its right, title and interest in and to the following, wherever located, whether now existing or hereafter from time to time arising or acquired (collectively, the **"Collateral"**):

(a)    all accounts (including right to payment of a monetary obligation, whether or not earned by performance, for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed of, for services rendered or to be rendered, but excluding any deposit accounts specially and exclusively used for payroll, payroll taxes, and other employee wage and benefit payments to or for the benefit of the Grantor's salaried employees); promissory notes, chattel paper (whether tangible or electronic), letters of credit, letter-of-credit rights (whether or not the letter of credit is evidenced by a writing), general intangibles (including all payment intangibles), money, deposit accounts, and any other contract rights or rights to the payment of money; and

(b)    all Proceeds and products of each of the foregoing, all books and records relating to the foregoing, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Grantor from time to time with respect to any of the foregoing.

3.    <u>Secured Obligations</u>. The Collateral secures the payment and performance of:

(a)    the obligations of the Grantor from time to time arising under the JVA,  when and as due, and  all fees, costs, attorneys' fees and disbursements, expenses and indemnities, resulting from the collection of the Loan in case of an Event of Default  (all such obligations, liabilities, sums and expenses set forth in *Section* 3 being herein collectively called the **"Secured Obligations"**).

4.    <u>Further Assurances</u>.

(a)    The Grantor hereby irrevocably authorizes the MBI at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any

financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by the Grantor hereunder, without the signature of the Grantor where permitted by law, including the filing of a financing statement describing the Collateral as all assets now owned or hereafter acquired by the Grantor, or words of similar effect. The Grantor agrees to provide all information required by the MBI pursuant to this Section promptly to the MBI upon request.

5.    Representations and Warranties. The Grantor represents and warrants to the MBI that:

(a)    the Grantor's exact legal name is that indicated on the first page hereof.

(b)    the Grantor is a Limited Liability Company, and is organized in New Jersey;

(c)    the Grantor's place of business is that indicated on the first page hereof;

(d)    the Grantor is the owner of or has other rights in the Collateral, free from any adverse lien, security interest or other encumbrance, except for the security interest created by this Agreement.

(e)    The Collateral consisting of securities have been duly authorized and validly issued, and are fully paid and non-assessable and subject to no options to purchase or similar rights.

(f)    At the time the Collateral becomes subject to the lien and security interest created by this Agreement, the Grantor will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement.

(g)    The pledge of the Collateral pursuant to this Agreement creates a valid and perfected First Priority security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

(h)    It has full power, authority and legal right to pledge the Collateral pursuant to this Agreement.

(i)    Each of this Agreement and the JVA has been duly authorized, executed and delivered by the Grantor and constitutes a legal, valid and binding obligation of the Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

6.    Receivables.

(a)    If any Event of Default shall have occurred and be continuing, the MBI may, or at the request and option of the MBI the Grantor shall, notify account debtors and other persons obligated on any of the Collateral of the security interest of the MBI in any account, chattel paper, general intangible, instrument or other Collateral and that payment thereof is to be made directly to the MBI.

7.    Underline{Covenants}. The Grantor covenants as follows:

(a)    The Grantor will not, without providing at least 10 days' prior written notice to the MBI, change its legal name, identity, type of organization, jurisdiction of organization, corporate structure, location of its chief executive office or its principal place of business or its organizational identification number. The Grantor will, prior to any change described in the preceding sentence, take all actions reasonably requested by the MBI to maintain the perfection and priority of the MBI's security interest in the Collateral.

(b)    The Grantor shall, at its own cost and expense, defend title to the Collateral and the First Priority lien and security interest of the MBI therein against the claim of any person claiming against or through the Grantor and shall maintain and preserve such perfected First Priority security interest for so long as this Agreement shall remain in effect.

(c)    Unless undertaken by the Grantor in the course of ordinary business, the Grantor will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to, restrict, or grant, create, permit or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on, any of the Collateral or any interest therein except as expressly provided for in this Agreement/herein or with the prior written consent of the MBI, not to be unreasonably withheld.

(d)    The Grantor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon. The Grantor will permit the MBI, or its designee, to inspect the Collateral at any reasonable time, wherever located.

(e)    The Grantor will pay promptly when due all taxes, assessments, governmental charges, and levies upon the Collateral or incurred in connection with the use or operation of the Collateral or incurred in connection with this Agreement.

8.    Underline{Remedies Upon Default}. If any Event of Default shall have occurred and be continuing and after:

(a)    The MBI, following the Default Notice sent to the Grantor, and left uncured may assert all rights and remedies of a MBI under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate or dispose of all or any portion of the Collateral. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to the Grantor at its notice address as provided in **Section** 10 hereof ten days prior to the date of such disposition shall constitute reasonable notice, but notice given in any other reasonable manner shall be sufficient. So long as the sale of the Collateral is made in a commercially reasonable manner, the MBI may sell such Collateral on such terms and to such purchaser(s) as the MBI in its absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors disposing of similar property. At any sale of the Collateral, if permitted by applicable law, the MBI may be the purchaser, licensee, assignee or recipient of the Collateral or any

part thereof and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price of the Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, the Grantor waives all claims, damages and demands it may acquire against the MBI arising out of the exercise by it of any rights hereunder. At any such sale, unless prohibited by applicable law, the MBI or any custodian may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption.

(b)    Any cash held by the MBI as Collateral and all cash Proceeds received by the MBI in respect of any sale of, collection from, or other realization upon all or any part of the Collateral shall be applied in whole or in part by the MBI to the payment of expenses incurred by the MBI in connection with the foregoing or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the MBI hereunder, including reasonable attorneys' fees, and the balance of such proceeds shall be applied or set off against all or any part of the Secured Obligations in such order as the MBI shall elect. Any surplus of such cash or cash Proceeds held by the MBI and remaining after payment in full of all the Secured Obligations shall be paid over to the Grantor or to whomsoever may be lawfully entitled to receive such surplus. The Grantor shall remain liable for any deficiency if such cash and the cash Proceeds of any sale or other realization of the Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by the MBI to collect such deficiency.

(c)    If the MBI shall determine to exercise its rights to sell all or any of the Collateral pursuant to this Section, the Grantor agrees that, upon request of the MBI, the Grantor will, at its own expense, do or cause to be done all such acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

9.    Amendments. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Grantor therefrom shall be effective unless the same shall be in writing and signed by the MBI and the Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

10.    Addresses For Notices. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the JVA, and addressed to the respective parties at their addresses as specified on the signature pages hereof or as to either party at such other address as shall be designated by such party in a written notice to each other party.

11.    Continuing Security Interest; Further Actions. This Agreement shall create a continuing First Priority lien and security interest in the Collateral and shall (a) subject to *Section* 12, remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Grantor, its successors and assigns, and (c) inure to the benefit of the MBI and its successors, transferees and assigns; *provided that* the Grantor may not assign or otherwise transfer any of its rights or obligations under this Agreement without the prior written consent of the MBI. Without limiting the generality of the foregoing clause (c), any assignee of the MBI's interest in any agreement or document which includes all or any of the Secured Obligations shall, upon assignment in

DocuSign Envelope ID: B602D2F1-3528-424A-B5E7-51D253E59246

accordance with Section 6 of the JVA, become vested with all the benefits granted to the MBI herein with respect to such Secured Obligations.

12.     Termination; Release.

On the date on which all Secured Obligations have been paid and performed in full, the MBI will, at the request and sole expense of the Grantor, (a) duly assign, transfer and deliver to or at the direction of the Grantor (without recourse and without any representation or warranty) such of the Collateral as may then remain in the possession of the MBI, together with any monies at the time held by the MBI hereunder, and (b) execute and deliver to the Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement, and (c) terminate the lien on said Collateral through the filing of a UCC-3 form.

13.     Governing law. This Agreement shall be governed by and interpreted and construed in accordance with the laws of the State of Florida applicable to contracts made and to be performed in such State and without reference to the choice of law principles of the State of Florida or any other state. The other provisions of Sections Disputes and Specific Performance of the JVA are incorporated herein, *mutatis mutandis*, as if a part hereof.

14.     Counterparts. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. This Agreement and the JVA constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto.

        IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**APEX DISTRIBUTION LLC**

By:

Name: _HECTOR ALVAREZ_

Title: _managing Partne_

**MBI SERVICES LLC**

By:

Name: Fernando Sandoval

Title: Managing Member