IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

MBI SERVICES, LLC,　　　　　　　　　　Case No. 21-cv-20975-BLOOM/Otazo-Reyes

　　　　Plaintiff,

v.

APEX DISTRIBUTION LLC, HECTOR
ALVAREZ, GREGORY JONES, IMITARI
CORPORATION, TERRY BARNES,
DAVID K. TILLMAN PLLC, JAN LAURENCE
SADICK, and J.L. SADICK, P.C.,

　　　　Defendants.
_____/

## SADICK DEFENDANTS' RESPONSE TO MOTION TO MODIFY SCHEDULING ORDER TO EXTEND PRE-TRIAL DEADLINES AND CONTINUE TRIAL

Defendants Jan Laurence Sadick ("Sadick") and J.L. Sadick, P.C. ("Sadick P.C.") (collectively, the "Sadick Defendants"), pursuant to Southern District of Florida Local Rule 7.1, hereby respond in opposition to Plaintiff's Motion to Modify Scheduling Order to Extend Pre-Trial Deadlines and Continue Trial.  (D.E. 104.)  For the reasons stated herein, the delays in this case are attributable almost exclusively to Plaintiff and its counsel's failure to adhere to applicable rules, statutes, and deadlines, and, therefore, good cause does not exist for amending the scheduling order to reopen the pleadings **over six months** after the deadline has passed.  For these reasons, the Motion to Modify Scheduling Order (D.E. 104) should be denied with prejudice.

### Plaintiff's Unsanctioned Failure to Timely Serve the Sadick Defendants

1.　　　This lawsuit was filed on March 11, 2021.  (D.E. 1.)  On March 15, 2021, the Court *sua sponte* dismissed this action without prejudice for failure to properly allege federal subject-matter jurisdiction.  (D.E. 4.)  That same day, Plaintiff amended as a matter of course.  (D.E. 5.)

2. Under Federal Rule of Civil Procedure 4(m), Plaintiff had 90 days to serve the Complaint. Therefore, Plaintiff needed to serve the Sadick Defendants by June 14, 2021. The Court actually set a deadline of June 9, 2021, for service given the original, infirm Complaint (D.E. 1). (D.E. 12.)

3. On June 9, 2021, without setting out good cause as to the reason for the delay **or requesting an extension of the deadline**, Plaintiff filed a Motion for Substituted Service on the Sadick Defendants. (D.E. 30.) The Court denied this initial motion because Plaintiff failed to file an executed affidavit as required by the rules. (D.E. 31.) Plaintiff then re-filed the Motion for Substitute Service on June 18, 2021—at least four days after its deadline to serve the Sadick Defendants had run. (D.E. 36.)

4. On June 22, 2021, without reaching the timeliness issue under Federal Rule of Civil Procedure 4(m), this Court granted the Motion for Substitute Service. (D.E. 37.)

5. Even though the Court granted the Motion for Substitute Service on June 22, 2021, Plaintiff did not actually complete the email service on the Sadick Defendants until July 1, 2021. Simply put, Plaintiff waited another week to send a simple email. This was **108 days** after the filing of the Amended Complaint (D.E. 5), and therefore in clear violation of Federal Rule of Civil Procedure 4(m).

6. On July 12, 2021, Plaintiff finally effectuated proper service on the Sadick Defendants. (D.Es. 50, 51.) However, in clear violation of Federal Rule of Civil Procedure 4(m), this service occurred **119 days** after the filing of the Amended Complaint (D.E. 5.)

7. Given the fact that Federal Rule of Civil Procedure 4(m) requires a District Court to grant more time if even the most minimal diligence is shown, the Sadick Defendants did not

move to dismiss on this ground, instead preserving that defect in the filing of its Answer and Affirmative Defenses. (D.E. 60.) The Sadick Defendants chose to move the case forward.

## This Court Lacks Personal Jurisdiction Over the Sadick Defendants

8. The Sadick Defendants were previously counsel for Terry Barnes and Imitari Corporation. Even in the Amended Complaint (D.E. 5), "Imitari is a corporation incorporated and existing under the laws of the State of Michigan, with its principal place of business in Troy, MI." (D.E. 5 ¶ 9.) In the same allegations, "Barnes is an individual residing in Troy, MI, and a citizen of the State of Michigan." (D.E. 5 ¶ 10.)

9. The Sadick Defendants are comprised of a Texas lawyer and a Texas law firm. (D.E. 5 ¶¶ 13, 14.)

10. Succinctly, a Texas lawyer that has previously represented a Michigan company and a Michigan citizen is dragged into court in the Southern District of Florida related to its receipt of funds (in Texas) from a Michigan attorney.

11. On its very face, it is clear that it strains all credulity to see even a *prima facie* case of personal jurisdiction over the Sadick Defendants.

12. That said, in the Amended Complaint, there are no claims at law or for damages against the Sadick Defendants, just for equitable relief (Count IX, Equitable Accounting; Count XVI, Constructive Trust), declaratory relief (Count XVII, Declaratory Action), and injunctive relief (Count XVIII, Injunction).

13. So, without moving to dismiss, the Sadick Defendants appeared under protest (D.E. 54, 55, 56), and preserved the personal jurisdiction defense in its answer. (D.E. 60.)

14. Without affirmative claims at law or for damages, the Sadick Defendants have not yet moved to dismiss the action.

15.     That said, Plaintiff is now seeking to move the case back over seven months, prior to its deadline to amend pleadings or join parties. (D.E. 104 at 12.) Plaintiff wants to do this, upon information and belief, to attempt to assert affirmative claims for damages against the Sadick Defendants, who have so far appeared in the case and defended without taking any affirmative action (propounding discovery of its own, etc.) because of the comparatively benign claims against them.

16.     If Plaintiff is allowed to do this, the Sadick Defendants will seek affirmative relief dismissing it from this action given the *prima facie* failure to show personal jurisdiction of this Court over the Sadick Defendants.  To this point, the Sadick Defendants have chosen not to do so, however, because they would be subject to a Rule 45 subpoena, which is essentially the functional equivalent of the equitable accounting claim to which it is currently subject.  Again, the Sadick Defendants are choosing to move the case forward.

## Discovery from the Sadick Defendants

17.     Against the backdrop of the fact that the Sadick Defendants are a lawyer and a law firm that owe duties of confidentiality and privilege to Barnes and Imitari, Plaintiff served 46 requests for production on the Sadick Defendants on August 11, 2021.

18.     On September 10, 2021, having received direction from Barnes and Imitari not to produce any potentially privileged documents to Plaintiff, the Sadick Defendants informed Plaintiff of this fact.  Attached hereto as **Exhibit A** is a true and correct copy of the email informing Plaintiff that a protective order would be sought.

19.     The Sadick Defendants set the requests for production for hearing in front of the Honorable Magistrate Judge Otazo-Reyes for September 29, 2021, seeking a protective order or

an order compelling production so as to comply with the Sadick Defendants ethical duties under the Texas Rules of Professional Conduct. (D.E. 72.)

20. Understanding the Sadick Defendants' concerns, Magistrate Judge Otazo-Reyes requested that the Sadick Defendants identify if it had *any* documents that were not **potentially privileged**—for it was not the Sadick Defendants' privilege to assert. (D.E. 79.) The Sadick Defendants timely complied with that order.

21. However, the Sadick Defendants were an agent of Barnes and Imitari with respect to these documents. Instead of seeking the documents and taking on a four-month fight regarding whether the Sadick Defendants could determine privilege for their clients—who were in the case—a common sense solution would have been to simply issue the same requests to Barnes and Imitari. Diligence would have meant issuing this discovery no later than notification that a protective order would be sought—on September 10, 2021.

22. Instead, without properly conferring, Plaintiff scheduled a discovery hearing before the Honorable Magistrate Judge Otazo-Reyes for November 23, 2021. (D.E. 87.) Attached hereto as **Exhibit B** is a true and correct copy of the October 29, 2021, correspondence regarding Plaintiff's failure to confer. That hearing was held, and the Sadick Defendants informed Magistrate Judge Otazo-Reyes of Plaintiff's refusal to properly confer. Plaintiff could not and, therefore, did not dispute its failure to properly confer. (D.E. 90.) That same day, Magistrate Judge Otazo-Reyes entered an order requiring the Parties to confer before further hearing on the matter. (D.E. 91.)

23. Again, without conferring, Plaintiff had already scheduled a discovery hearing in front of Magistrate Judge Otazo-Reyes on December 14, 2021. (D.E. 88.) This was over the Sadick Defendants' request for 30(b)(6) deposition topics prior to providing a deposition date (as

is normal practice) and a request that the privilege issue be resolved before Mr. Sadick sit for a deposition so as to avoid multiple depositions. Attached hereto as **Exhibit C** is a true and correct copy of the email correspondence that was never discussed prior to the deposition issue being set for hearing.

24. At the hearing on December 14, 2021, Magistrate Judge Otazo-Reyes once again agreed with the Sadick Defendants that it was not their privilege to assert or waive—an argument that Plaintiff had been challenging since at least September 29, 2021—and directed the Sadick Defendants to make their production to counsel for Barnes and Imitari, who could then decide what documents to produce and which to withhold as privileged. (D.E. 96.)

25. Once again, the Sadick Defendants timely complied with this order.

### Plaintiff's Repeated Rules Violations

26. In addition to having the complaint dismissed *sua sponte* for failure to allege subject-matter jurisdiction and failure to timely serve the Sadick Defendants, Plaintiff's prosecution of this action has been rife with violations of both the Local and Federal Rules, which this Court and the Honorable Magistrate Judge Otazo-Reyes have noted.

27. Even after dismissing the case for failure to properly allege federal subject-matter jurisdiction (D.E. 4), the Court issued a second Order (D.E. 6), requiring Plaintiff to establish federal subject-matter jurisdiction, given the "upon information and belief" allegations regarding diversity of citizenship.

28. On May 17, 2021, the Court issued an Order to Show Cause regarding failure to comply with the Scheduling Order. (D.E. 23.)

29. On September 10, 2021, Plaintiff filed a purported Stipulation of Dismissal regarding the Tillman Defendants. (D.E. 65.) The Sadick Defendants immediately informed

counsel for Plaintiff that this purported Stipulation of Dismissal violated Federal Rule of Civil Procedure 41, yet Plaintiff refused to withdraw it. Thus, the Sadick Defendants apprised the Court (D.E. 66), and the Court rejected the Stipulation for failure to Comply with Federal Rule of Civil Procedure 41. (D.E. 69.)

30. As noted above, without properly conferring, Plaintiff scheduled a discovery hearing before the Honorable Magistrate Judge Otazo-Reyes for November 23, 2021. (D.E. 87.) That hearing was held, and Magistrate Judge Otazo-Reyes was informed of the failure to properly confer, which Plaintiff did not challenge. (D.E. 90.) That same day, Magistrate Judge Otazo-Reyes entered an order requiring the Parties to confer before further hearing on the matter. (D.E. 91.)

31. Plaintiff had scheduled a second discovery hearing before the Honorable Magistrate Judge Otazo-Reyes for December 14, 2021 (D.E. 88), without ever properly conferring. Magistrate Judge Otazo-Reyes was notified of this at the November 23 hearing (D.E. 90), and she required conferral in advance of the December 14 hearing. (D.E. 91.)

32. At 4:37 p.m. on December 21, 2021, counsel for Plaintiff sent an email stating "Gentlemen: will you oppose a motion to extend the discovery cut off until Feb. 25, 2022?" Less than 24 hours later, while undersigned counsel was conferring with the Sadick Defendants regarding the Motion, Plaintiff filed its Motion for Extension of Time for Discovery Cutoff. (D.E. 97.) The Court properly deduced that minimal effort had been made to confer and denied the Motion without prejudice that same day. (D.E. 98.)

33. Then, in addition to not conferring regarding this Motion, Plaintiff request to "continue trial" without attaching a supporting affidavit as required by Southern District of Florida Local Rule 7.6.

**The Wells Fargo Subpoena**

34. On September 22, 2021, Plaintiff noticed a Rule 45 subpoena to Wells Fargo to the Sadick Defendants.

35. That same day, the Sadick Defendants requested an opportunity to meet and confer on the subpoena. The Parties conferred regarding the subpoena on September 24, 2021. During that conferral call, counsel for the Sadick Defendants noted that one of its objections was compliance with Florida Statutes Section 655.069(1)(e)—prepayment of the bank's costs. Plaintiff objected to this, however. Counsel for Plaintiff then requested that the Sadick Defendants' proposal be in writing. Counsel for the Sadick Defendants responded *that same day* with the proposal. Attached hereto as **Exhibit D** is a true and correct copy of the correspondence regarding the Wells Fargo subpoena.

36. Rather than ever respond to the proposal, nearly three months later, Plaintiff made the Motion to Compel Wells Fargo. (D.E. 94.)

37. The lack of conferral was not for fault of the Sadick Defendants, as undersigned followed up *in writing* on both October 22, 2021, and October 29, 2021. Further, orally, counsel for the Sadick Defendants followed up on December 2, 2021, at which point counsel for Plaintiff stated that they were filing a Motion to Compel in Houston. Counsel for the Sadick Defendants literally walked counsel for Plaintiff through the proper process, including that since Wells Fargo had branches in the Southern District of Florida, the subpoena could have been served on a branch in Miami and the Motion to Compel could have been filed in Miami. Counsel for Plaintiff disagreed—that is, until counsel for Wells Fargo said the exact same thing as the Sadick Defendants.

38. Even then, once the Motion to Compel (D.E. 94) was filed, Plaintiff still had not complied with Florida Statutes Section 655.069(1)(e)—compliance that the Sadick Defendants demanded nearly three months prior. Exh. D.

### Conferral Regarding this Motion

39. Even with respect to the pending motion (D.E. 104), Counsel for Plaintiff's conferral was as follows:

    a. Mr. Maura: January 11, 5:11 p.m.: "We are going to seek a 6-month continuance of trial and all related trial deadlines based on the recently obtained information. Please let us know if you will oppose it."

    b. Mr. Ludens: January 11, 5:13 p.m.: "What is the recently obtained information?"

    c. Mr. Maura: January 11, 5:15 p.m.: "Responses to discovery."

A true and correct copy of this correspondence is attached hereto as **Exhibit E**.

40. Crucially, nowhere in "conferral" did Plaintiff specify *why* the extension was sought **or that it was to also allow for re-opening of the pleadings**. Exh. E. Plaintiff outright omitted that it would be seeking to reopen pleadings to attempt to get an agreement and then slip this into the motion as "unopposed." Exh. E.

### Legal Standard

41. Federal Rule of Civil Procedure 16(b)(4) sets out a "good cause" standard for modifying a scheduling order.

42. "This good cause standard precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998). "'If a party was not diligent, the good cause inquiry should end.'" *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

43.     A crucial fact in *Sosa* was that "counsel waited some four months before propounding written discovery and took no oral depositions until nearly three months after the deadline for amending the complaint."  113 F.3d at 1419.

### Argument – Re-Opening Pleadings

44.     As noted above, this matter was filed March 11, 2021.  (D.E. 1.)  Yet, Plaintiff failed to even cross the threshold bar of pleading subject-matter jurisdiction resulting in *sua sponte* dismissal (D.E. 4) and then the functional equivalent of an order to show cause (D.E. 6) even after amendment (D.E. 5.)

45.     As noted above, Plaintiff untimely served the Sadick Defendants without ever moving for an extension under Federal Rule of Civil Procedure 4(m).  Plaintiff did not even seek authority for alternative service (D.E. 36) until *after* its deadline for service had run.

46.     Then, once the Court did grant alternate service (June 22; D.E. 37), Plaintiff waited an additional nine days (July 1) before emailing the Amended Complaint (D.E. 5) to the Sadick Defendants.

47.     More crucial is that even once the Court granted alternate service (June 22; D.E. 37), Plaintiff waited an additional ***fifty*** days before propounding discovery on the Sadick Defendants.  Of course, under Federal Rule of Civil Procedure 26(d), discovery could have been propounded on the Sadick Defendants with the email service.

48.     Plaintiff has tried to argue that Sadick and Sadick P.C. attempted to evade service.  However, the address on the summons for Sadick personally (D.E. 3) (4669 Southwest Fwy, Ste 565), was the *office* address on file with the Texas Bar.  The purported attempts at service at that address for Sadick personally were essentially worthless in light of COVID and the fact that law

offices have been a virtual ghost town as a result. That said, Sadick continued visiting office, though he never encountered a process server.

49. More concerning, however, is the admission in the Motion for Substitute Service that on April 2, 2021, the process server went to Sadick's home and *spoke to his wife*. So, while Sadick P.C. could not be served through his wife, **Sadick properly could have been**. Therefore, as of April 2, 2021, Plaintiff **could have effectuated service on Sadick under Federal Rule of Civil Procedure 4(e)(2)(B)**. "Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by" "(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Plaintiff, chose not to effectuate service, however, and now laughably claims that Sadick evaded service.

50. Under Federal Rule of Civil Procedure 4(c), "A summons must be served with a copy of the compliant. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m)."

51. Therefore, Plaintiff's claims that the Sadick Defendants were evading service is disturbingly disingenuous—Plaintiff in its own signed document states that it had the opportunity to complete service on Sadick *individually* on April 2, 2021. Yet, because of a lack of knowledge, neglect, or ignorance, Plaintiff did not do so. The inquiry should simply end here. A diligent Plaintiff would have completed service on Sadick *individually* on April 2, 2021—nearly three months before the pleading amendment deadline. This Plaintiff did not do.

52. Even if the Court continues its diligence inquiry, Barnes and Imitari appeared in the case on April 5, 2021. (D.E. 10.) As noted above, as the Sadick Defendants were Barnes's and Imitari's agent(s), discovery could have been issued to Barnes and Imitari for documents in

their custody *or control* well before the pleadings amendment deadline.  Plaintiff did not do so, however, waiting until the Sadick Defendants appeared and then speciously claiming that the Sadick Defendants were being obstreperous by complying with the Federal Rules of Evidence, the Texas Rules of Professional Conduct, and this Circuit's ruling in *United States v. Noriega*, 917 F. 2d 1543, 1551 (11th Cir. 1990), that "It is a 'bedrock principle that the attorney-client privilege is the client's and his alone.  If the client wishes to waive it, the attorney may not assert it, either for the client's or his own benefit.'"  Plaintiff was insistent on obtaining client documents from a lawyer (the Sadick Defendants) rather than simply asking the clients themselves in Barnes and Imitari, which Plaintiff was ultimately forced to do because of this Court's recognition that the privilege belonged to Barnes and Imitari.

53. Instead of the proper path, Plaintiff sought this information from the *lawyer* rather than the *client*.  The lawyer complied with his duties under the Texas Rules of Professional Conduct.  Plaintiff improperly set a discovery hearing without conferring and then lost another month due to his attorney's failure to comply with the Southern District of Florida's Local Rules.  (Exh. B; D.E. 91.)

54. All along, counsel for the Sadick Defendants suggested that he simply provide the documents to counsel for Barnes and Imitari since it was their potential privilege.  Instead, Plaintiff forced not one (D.E. 78), not two (D.E. 90), but three (D.E. 95) discovery hearings on the matter.  And, ultimately, Magistrate Judge Otazo-Reyes entered an order adopting ***exactly what counsel for the Sadick Defendants had been proposing for months***—that the Sadick Defendants turn the documents over to counsel for Barnes and Imitari and then the fight could be had between the parties in interest.  (D.E. 96; Exh. A.)

55. The process with the discovery to the Sadick Defendants should have been handled by directing the discovery to Barnes and Imitari instead of the Sadick Defendants. Instead of choosing the most efficient path of least resistance, Plaintiff chose to tilt at windmills trying to get Magistrate Judge Otazo-Reyes to make the Sadick Defendants prepare a privilege log—*i.e.*, assert the privilege—in face of clear law in this Circuit stating otherwise. Plaintiff cannot now claim diligence given its poor decisions.

56. Next, there is the issue of the Wells Fargo subpoena. It was noticed on September 22, 2021. This was nearly three months after the pleadings deadline. Plaintiff had the written proposal from the Sadick Defendants on September 24, 2021. Exh. D. Plaintiff's counsel chose not to confer regarding that proposal or otherwise have the Sadick Defendants set this matter for a hearing.

57. Instead, Plaintiff incorrectly went through the process of getting admitted in the Southern District of Texas—though compliance with the subpoena was required in the Southern District of Florida—before finally acquiescing to what counsel for Plaintiff had been told by both counsel for the Sadick Defendants and counsel for Wells Fargo—that the motion to compel should be filed in the Southern District of Florida. (D.E. 94.) Again, Plaintiff does not get to use its ignorance of the law as diligence.

58. Then, even more concerning is the fact that Magistrate Judge Otazo-Reyes required what counsel for the Sadick Defendants had been proposing since September 24, 2021. (D.E. 103.) Had Plaintiff simply agreed to the Sadick Defendants' proposal then—or better yet, complied with Florida Statutes Section 655.069(1)(e)—the Motion to Compel would not have been necessary, nor would the delay while Plaintiff had its attorneys admitted in the Southern District of Texas.

59. Crucially, Plaintiff has failed to show how it was diligent *prior to the pleadings deadline running* on June 25, 2021. Plaintiff submitted the Joint Scheduling Report (without input from the Sadick Defendants) on April 26, 2021. (D.E. 13.) Plaintiff suggested the June 25, 2021 amended pleadings deadline. (D.E. 13 at 2.) As noted above, Plaintiff by its own admission could have served Sadick personally on April 2, 2021 (D.E. 36 at 2; 36-1 at 2) but chose not to do so.

60. So, Plaintiff suggested a deadline 60 days down the road from where it was, yet, even when the Court allowed the alternative service (D.E. 37), Plaintiff waited fifty days before propounding the discovery on the Sadick Defendants and then served improper discovery that it should have sought from two other Defendants in the case. So, against this backdrop, it is abundantly clear that Plaintiff was not diligent with respect to the amended pleadings deadline.

61. Therefore, the amended pleadings deadline should be maintained.

62. It is worth noting that a Motion for Leave to Amend is required to be supported by the proposed amended complaint under Southern District of Florida Local Rule 15.1. That is not done here. And, Plaintiff is not doing this because Plaintiff's counsel never conferred regarding a desire to extend the amendment deadline let alone amend the complaint, as noted above. Exh. E. In federal court, an amended pleadings deadline is not "trial related." Moreover, the deadline was June 25, 2021, so an extension of that deadline by six months (the requested extension per the conferral) would have been at best December 27, 2021. Exh. E. Instead, Plaintiff's counsel tried to sneak this deadline in without conferring. The Court can see this for what it is.

63. Finally, as noted above, the Sadick Defendants made decisions regarding its defense based upon the pleadings as they stood—and which had long since closed. The Sadick Defendants, facing only equitable accounting, declaratory relief, constructive trust, and injunctive

claims, chose not to propound discovery of its own—to also preserve its personal jurisdiction defense.

64.  As full candor to the Court, on August 9, 2021, Magistrate Judge Otazo-Reyes had a hearing on the Motion to Dismiss and Motion for Summary Judgment of the Tillman Defendants. At that hearing, Plaintiff's counsel informed the Court that he intended to amend as to the Tillman Defendants to include a civil theft claim. Instead, the Tillman Defendants settled. (D.E. 65.) So, the Sadick Defendants already know what Plaintiff's play is here: Get the Court to reopen the pleadings, then file a very substantive amended pleading now seeking damages against the Sadick Defendants. This will fundamentally change the "needs of the case," under Federal Rule of Civil Procedure 26(b).

65.  This will be followed by a Motion to Dismiss for lack of personal jurisdiction by the Sadick Defendants. Yet, even though the Sadick Defendants having answered the case August 5, 2021, asserting a personal jurisdiction defense, Plaintiff has failed to do any jurisdictional discovery of the Sadick Defendants. So, the Court will face even more extension requests while Plaintiff realizes that they should have done jurisdictional discovery since it is Plaintiff's burden to establish personal jurisdiction.

66.  More fundamentally, because the Sadick Defendants did not affirmatively participate in discovery to this point, all parties will face new additional discovery. Parties that have been deposed already will have to be re-deposed. The costs of this case will explode.

67.  Most fundamental is that Plaintiff needs to show diligence. Plaintiff has known for months that the Sadick Defendants received payment for some past due balances out of the funds at issue in this case. Plaintiff simply has not known the amount. Counsel for Plaintiff admitted as much in the conferral call with counsel for the Sadick Defendants on December 2, 2021.

68.     For all of these reasons, Plaintiff cannot show its diligence. Plaintiff made strategic decisions. Plaintiff now is rethinking those decisions. That is not the basis to completely re-open a case which is otherwise ready to proceed to trial. The Motion should be denied.

## Argument – Discovery Deadlines

69.     With respect to the discovery deadlines, the Sadick Defendants oppose any new discovery but would agree as a courtesy to sit for Sadick's personal deposition, which was deferred while the privilege issue was resolved. The privilege issue was resolved on January 3, 2022. Plaintiff has not set a discovery hearing on the privilege objections, so there is no reason that Sadick's deposition could not have taken place prior to the Court's imposed deadline of January 14, 2021. After the privilege issue was resolved, no such date was requested or provided by Plaintiff. Mr. Maura had last requested a date on December 27, 2021, prior to the privilege issue being resolved and immediately after Magistrate Judge Otazo-Reyes held the Motion to Compel in abeyance. (D.E.96) Zero diligence can be shown.

70.     With respect to the Sadick P.C. deposition, 30(b)(6) topics were requested on November 11, 2021. Exh. C. To this day, 30(b)(6) topics have not been provided. There simply is no diligence with respect to Sadick P.C.

71.     Moreover, even though the Sadick Defendants did not affirmatively propound discovery, they will note that Plaintiff was served with discovery by other defendants on November 12, 2021, and did not even timely respond to this discovery, with a motion to compel threatened before the responses were finally provided on January 7, 2022.

72.     Crucial here is that Plaintiff claims that Defendants obstructed discovery. While Plaintiff gives the dates that a subpoena was issued to Comerica (D.E. 104 at 5), Plaintiff conveniently omits that the protective order was entered on July 30, 2021. (D.E. 59.) So, the

Comerica documents, which "revealed that on January 21, 2021, Mr. Tillman had wired $1,980,000 to the J.L. Sadick PC (Escrow) Account maintained by Wells Fargo," (D.E. 104 at 5–6), were produced shortly thereafter. Plaintiff does not want the Court to know how long it waited to subpoena Wells Fargo, which occurred on September 22, 2021. This is because when the Court deduces that the document was produced in early August and the subpoena to Wells Fargo did not get issued until September 22, 2021, combined with the fact that Plaintiff refused to comply with Florida law when issuing the subpoena (Fla. Stat. § 655.069(1)(e)), the Court will conclude that Plaintiff was not diligent.

73.     Plaintiff lacks candor to this Court. According to Plaintiff, all delay is attributable to Defendants, when, in reality, much of the delay is because counsel for Plaintiff proved to be obstreperous to his own client's detriment. Take, for example, the first paragraph of the Motion's history of the Scheduling Order (D.E. 104 at 2). Plaintiff says that Plaintiff filed an amended complaint but fails to remind the Court that it had been dismissed *sua sponte* for lack of subject-matter jurisdiction. This continues throughout the Motion.

74.     Most troubling is Plaintiff's failure to even deduce that Sadick individually could have been served via his wife on April 2, 2021 (D.E. 36 at 2; D.E. 36-1 at 2), and instead trying to paint the Sadick Defendants as evading service. Plaintiff's inability to comprehend Federal Rule of Civil Procedure 4(e)(2)(B) is not the Sadick Defendants evading service. Plaintiff's ignorance cannot be converted into diligence. This was Plaintiff's responsibility under Federal Rule of Civil Procedure 4, and Plaintiff abdicated it.

75.     Counsel for Plaintiff made strategic decisions throughout this case. As is set out above, many of those strategic decisions flew in the face of the Southern District of Florida Local Rules, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, Florida Statutes, the

Texas Rules of Professional Responsibility, and common sense. As a result, Plaintiff cannot show diligence.

76. At most, the Court should re-open discovery on a limited basis to allow for the depositions to be completed and the case to be prepared for trial.

77. For these reasons, the Motion should be overwhelmingly denied.

Date: January 28, 2022

Respectfully Submitted,

By: */s/Zachary D. Ludens*
JORDAN A. SHAW, ESQ.
Fla. Bar No. 111771
ZACHARY D. LUDENS, ESQ.
Fla. Bar. No. 111620
ZEBERSKY PAYNE SHAW LEWENZ, LLP
110 SE 6th Street Suite 2900
Ft. Lauderdale, FL 33301
Telephone: (954) 989-6333
Facsimile: (954) 989-7781
Primary Email: JShaw@zpllp.com; ZLudens@zpllp.com
Secondary Email: MEdmondson@zpllp.com; MLomastro@zpllp.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Court's CM/ECF system this 28th day of January, 2022, and was filed on all counsel of record via notices generated by the same.

*/s/ Zachary D. Ludens*
Zachary D. Ludens, Esq.

[2216086/1]                                    18