UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv- 20975-BLOOM/Otazo-Reyes

MBI SERVICES, LLC,

    Plaintiff,

v.

APEX DISTRIBUTION LLC, *et al.,*

    Defendants.

_____/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**THIS CAUSE** is before the Court following a non-jury trial held on December 12, 2022. ECF No. [242]. Plaintiff MBI Services, LLC ("MBI") subsequently filed Proposed Findings of Fact and Conclusions of Law, ECF No. [246] ("MBI's Proposed Findings"). The Court has carefully considered the evidence presented at trial, MBI's Proposed Findings, the record as a whole, and the applicable law. Set forth below are the Court's relevant findings of fact and conclusions of law.

**I.   INTRODUCTION**

This case stems from a failed business venture between Plaintiff MBI Services, LLC ("MBI"), and Defendant Apex Distribution LLC ("Apex"). *See generally* ECF No. [5] ("Amended Complaint"). According to the Amended Complaint, Defendant Apex, Defendant Hector Alvarez ("Alvarez"), Defendant Terry Barnes ("Barnes"), and Defendant Gregory Jones ("Jones") fraudulently induced MBI into wiring $2,000,000.00 to Apex for the purchase of disposable gloves. *Id.* ¶¶ 1, 16. Apex, Alvarez, Barnes, and Jones then allegedly converted that $2,000,000.00 for their benefit and the benefit of Defendant Imitari Corporation ("Imitari"). *Id.* ¶¶ 169, 170. In

addition to seeking recovery from the aforementioned Defendants, MBI also sought to recover from Apex's lawyer, Defendant David Tillman ("Tillman") and Tillman & Tillman PLLC (collectively, "the Tillman Defendants"), and another lawyer who worked on behalf of Apex, Jan Laurence Sadick ("Sadick") and J.L. Sadick P.C. (collectively, "the Sadick Defendants") for their roles in the alleged scheme. *See generally id*.

On October 12, 2021, the Court dismissed the Tillman Defendants in accordance with a settlement agreement they reached with MBI. ECF No. [85]. The Sadick Defendants also settled and were dismissed on November 21, 2022. ECF No. [221]. On December 9, 2022, the Court entered a Consent Judgment pursuant to a settlement agreement between MBI, Apex, and Alvarez, in which Apex and Alvarez agreed to pay MBI $2,100,000.00. *See* ECF No. [241].

The remaining Defendants in this case are Barnes, Jones, and Imitari. Although those three Defendants were initially represented by counsel and filed a timely Answer to MBI's Amended Complaint, ECF No. [17], their counsel subsequently withdrew from this case. *See* ECF No. [168]. The Court ordered the Defendants to retain counsel by July 8, 2022, ECF No. [169], and subsequently extended that deadline to July 25, 2022. *See* ECF No. [176]. The Defendants failed to retain counsel by that deadline, and it appeared that Barnes and Jones had decided to proceed *pro se*. ECF No. [182]. Imitari, on the other hand, is a corporation and therefore ineligible to proceed on a *pro se* basis, and the Court ordered that Imitari's Answer to the Amended Complaint be stricken. *Id.* at 2. The Clerk thereafter entered default against Imitari. ECF No. [183].

Trial against Barnes and Jones was scheduled to begin on December 12, 2022. *See* ECF No. [230]. After being duly noticed, Barnes and Jones failed to appear. ECF No. [242]. At the scheduled trial, MBI waived its right to a jury trial and moved for entry of a default against Barnes and Jones. *Id*. The Court granted that motion. *See Gulf Coast Fans, Inc. v. Midwest Electronics*

*Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984) ("The failure to appear at a duly scheduled trial after months of preparation by the parties and by the trial court is a serious offense for which the entry of a default is appropriate."). MBI dismissed its claims against Imitari. The Court then held a bench trial to determine the amount of damages MBI should recover against Jones and Barnes.

The Amended Complaint alleges the following Counts against Jones and Barnes: Count V (Fraudulent Inducement/Misrepresentation), Count XI (Conversion), Count XIII (Unjust Enrichment), Count XIV (Civil Conspiracy to Commit Fraud), Count XV (Fraud), Count XIX (Florida Deceptive and Unfair Trade Practices Act), and Count XX (RICO).

## II. FINDINGS OF FACT

MBI is engaged in the business of procuring personal protective equipment, including gloves, for resale in the U.S. market. In December 2020, a managing member of MBI, Jorge Garcia-Menocal, was introduced to Alvarez and Apex.

Alvarez and Jones entered into a Joint Venture Agreement ("JVA"), under which MBI would provide $2,000,000.00 in financing to Apex, Apex would import 5 million boxes of gloves per week, and MBI would receive 5 cents per box. The JVA provided that MBI's funds could be used exclusively for costs directly related to the importation of gloves.

On January 20, 2021, MBI wired $2,000,000.00 to Tillman. Shortly thereafter, it became apparent to MBI that Apex was not performing in accordance with the JVA. Among other issues, Apex continuously changed the date of shipment arrivals, and failed to provide documents regarding its activity. MBI informed Alvarez that it was going to declare a default under the JVA. Alvarez assured MBI that all was in order and offered to arrange a phone call with his partners, Barnes and Jones. Over the course of several weeks, Barnes and Jones assured MBI that Apex's

non-performance was due to banking issues that were being rectified. Those assurances were lies; the Defendants had no intention of performing in accordance with the JVA. MBI declared default under the JVA on February 10, 2021. Apex was required to return the $2,000,000.00 to MBI by February 25, 2021, but failed to do so.

MBI subsequently discovered that its $2,000,000.00 had been misappropriated by Barnes and Jones. Pursuant to Alvarez's instructions, Tillman took $20,000.00 out of the funds as his attorney's fee and wired the rest of the money to Sadick. Following Barnes's instructions, Sadick paid himself $130,000.00 from the remaining $1,980,000.00, and then distributed the remaining money to a variety of destinations, including companies owned by Barnes, and to properties in Michigan that Barnes was purchasing.

## III. CONCLUSIONS OF LAW

All well-pleaded allegations of fact are deemed admitted upon entry of default. *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).[1] "The corollary of this rule, however, is that a defendant's default does not in itself warrant the court in entering a default judgment. There must be a sufficient basis in the pleadings for the judgment entered." *Id.* Moreover, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters[.]" *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003).

### A. Liability

MBI asserts seven bases for liability against Jones and Barnes: Count V (Fraudulent Inducement/Misrepresentation), Count XI (Conversion), Count XIII (Unjust Enrichment), Count XIV (Civil Conspiracy to Commit Fraud), Count XV (Fraud), Count XIX (Florida Deceptive and

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

Unfair Trade Practices Act), and Count XX (RICO). For the reasons that follow, the Court finds that Barnes and Jones are liable under Counts V (Fraudulent Inducement/Misrepresentation), XI (Conversion), XIII (Unjust Enrichment), XIV (Civil Conspiracy to Commit Fraud), and XIX (Florida Deceptive and Unfair Trade Practices Act).

### i. Count V (Fraudulent Misrepresentation)

A claim for fraudulent misrepresentation under Florida law has four elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (quotation marks omitted).

According to the Amended Complaint and the uncontroverted evidence and testimony presented at trial, Jones and Barnes made the following false statements concerning material facts: (i) that non-performance was attributable to banking issues; (ii) that the banking issues had been rectified; (iii) that there were issues obtaining inspection reports, but the inspection had been conducted; and (iv) that the gloves were ready for delivery and being loaded onto planes as they spoke. Jones and Barnes knew those statements were false but made them with the intent that MBI would rely on them and would delay seeking the return of the Funds. MBI relied on Jones' and Barnes' false statements and delayed declaring a default under the JVA, which caused it damages by being deprived of the Funds. Based on these uncontested allegations, MBI has shown that Jones and Barns are liable for fraudulent misrepresentation.

### ii. Conversion (Count XI)

The elements of conversion of money are: "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives

5

plaintiff of that money; and (4) a demand for return of the money and a refusal to do so." *Longo v. Campus Advantage, Inc.*, 588 F. Supp. 3d 1286, 1298 (M.D. Fla. 2022) (quotation marks omitted). "Conversion may be properly charged where, for example, the money was set aside in a trust or escrow account." *Combe v. Flocar Inv. Grp. Corp.*, 977 F. Supp. 2d 1301, 1308 (S.D. Fla. 2013).

In this action, $2,000,000.00 in funds were deposited in the Tillman Defendants' trust account and were to be used only for certain expenses outlined in the JVA. MBI had an absolute right to immediate possession of the funds ten business days after declaring a default under the JVA, on February 25, 2021. Rather than returning the funds to MBI, Jones and Barnes distributed the money between themselves and third parties with business links to them. Under Florida law, "codefendants can be held jointly liable for conversion." *Taubenfeld v. Lasko*, 324 So. 3d 529, 544 (Fla. Dist. Ct. App. 2021). MBI has sufficiently alleged, and demonstrated during the trial, that Jones and Barnes are liable to MBI for $2,000,000 due to their conversion of the Funds

### iii. Unjust Enrichment (Count XIII)

"A claim for unjust enrichment has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for the defendants to retain it without paying the value thereof." *Virgilio v. Ryland Gr., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012).

Here, MBI indirectly conferred a benefit on Jones and Barnes by wiring $2,000,000.00 to Apex, which then distributed the money to benefit Jones and Barnes. Jones and Barnes knew of the benefit and voluntarily accepted and retained it. In these circumstances, it would be inequitable for Jones and Barnes to retain the funds, which were intended to pay for expenses related to the JVA, not to be pocketed by Jones and Barnes and used in private transactions unrelated to the JVA. Thus, Jones and Barnes are liable under a theory of unjust enrichment.

### iv. Civil Conspiracy (Count XIV)

Under Florida law, a claim of civil conspiracy requires: "(1) an agreement between two or more parties; (2) to do an unlawful act or to do a lawful act by unlawful means; (3) the doing of some overt act in pursuance of the conspiracy; and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345 (S.D. Fla. 2018) (quoting *Philip Morris USA, Inc. v. Russo*, 175 So.3d 681, 686 n.9 (Fla. 2015)). "Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result." *In re Chira*, 353 B.R. 693, 732 (Bankr. S.D. Fla. 2006) (quoting Restatement of Torts (Second) § 876(a). "The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself." *Id.*

Here, Jones and Barnes engaged in a series of misrepresentations to defraud MBI by inducing it to wire money pursuant to the JVA. MBI's well-pleaded allegations, testimony, and evidence presented at trial, are sufficient to establish a civil conspiracy to commit fraud and conversion. MBI has shown that, as the result of the conspiracy, MBI was unlawfully deprived of $2,000,000.00. Jones and Barnes are liable to Plaintiff for $2,000,000.00 for civil conspiracy.

### v. Fraud (Count XV)

MBI cites *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985), for the proposition that fraud consists of the following elements: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and, (4) consequent injury by the party acting in reliance on the representation." ECF No. [246] at 9. However, *Johnson* was addressing the elements of "fraudulent misrepresentation," not "fraud." 480 So. 2d at 627. Florida law does not appear to recognize a tort of "fraud" that is distinct from "fraudulent misrepresentation." *See Hercules Capital, Inc. v.*

7

*Gittleman*, No. 16-cv-81663, 2018 WL 395489, at *20 (S.D. Fla. Jan. 12, 2018) (treating "fraud" and "fraudulent misrepresentation" as synonymous).

The Court has already determined that Jones and Barnes are liable under Count V for fraudulent misrepresentation. MBI has not shown that they are additionally liable under a separate theory of fraud.

### vi. FDUTPA (Count XIX)

The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is designed to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Yonan v. Walmart*, 591 F. Supp. 3d 1291, 1298 (S.D. Fla. 2022) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). To sustain a FDUTPA claim, a plaintiff must show "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc*., 715 F.3d 1243, 1250 (11th Cir. 2013). Within the context of FDUTPA, "deception occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Zlotnick v. Premier Sales Gr., Inc*., 480 F.3d 1281, 1284 (11th Cir. 2007) (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc*., 842 So.2d 773, 777 (Fla.2003)). FDUTPA defines "consumer" broadly to mean "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination." Fla. Stat. 501.203(7).

Here, Barnes and Jones repeatedly lied to MBI regarding Apex's performance under the JVA. Their lies constitute a series of deceptive acts. Their deception caused MBI to delay declaring

a default under the JVA, which gave Barnes and Jones additional time to misappropriate MBI's funds. According to the Amended Complaint and the uncontroverted evidence and testimony presented by MBI at trial, Barnes and Jones are liable under FDUTPA.

### vii. RICO (Count XX)

A plaintiff asserting a RICO claim must establish: "(1) a violation of 18 U.S.C. § 1962; (2) injury to business or property; and (3) causation." *Almanza v. United Airlines, Inc*., 851 F.3d 1060, 1066 (11th Cir. 2017). Section 1962(c) makes it unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to "conduct, or participate in the conduct of, the affairs of such an enterprise through a pattern of racketeering activity." *Avirgan v. Hull*, 932 F.2d 1572, 1578 (11th Cir. 1991). To recover under § 1962(c), a plaintiff must establish that a defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering acts." *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1348 (11th Cir. 2016) (quotation marks omitted).

"To successfully allege a pattern of racketeering activity, plaintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1215 (11th Cir. 2020).

Here, MBI argues that it has shown Barnes and Jones committed multiple violations of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud) over the course of their scheme to deprive MBI of $2,000,000.00. ECF No. [246] at 13. However, "independently chargeable instances of mail or wire fraud cannot constitute a "pattern of racketeering activity" when they arise from a single

transaction." *Id.* at 1216. "Because each use of the mails or wires in furtherance of a single instance of fraud is independently indictable under the federal mail and wire fraud statutes, to hold otherwise could make RICO cases out of one allegedly fraudulent transaction." *Id.* (citation omitted).

Accordingly, Barnes and Jones' multiple instances of deception do not suffice to show a "pattern of racketeering activity" because they were all "in furtherance of a single instance of fraud," that is, the Defendants' efforts to defraud MBI of $2,000,000.00. *Id*. MBI's passing references to a Texas case in which Barnes and Jones allegedly engaged in similar fraudulent conduct is insufficient to qualify as a predicate act of racketeering. *Id*. at 1215. Moreover, MBI has neither alleged in its Amended Complaint nor demonstrated at trial that Barnes and Jones were engaged in "criminal conduct of a *continuing* nature." *Jackson*, 372 F.3d at 1264; *see also Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 497 n. 14 (1985) (explaining that "while two acts are necessary, they may not be sufficient. Indeed, in common parlance, two of anything do not generally form a 'pattern.'").

Accordingly, Barnes and Jones are not liable under RICO.

**B. Damages**

For the reasons described above, MBI has shown that Barnes and Jones are liable under theories of conversion, unjust enrichment, civil conspiracy, fraudulent misrepresentation, and FDUTPA. MBI has further shown that it has suffered damages in the amount of $2,000,000.00. MBI entitled to recover $2,000,000.00 from Jones and Barnes, who are jointly and severally liable. *See M&M Aircraft Servs., Inc. v. ECF Techs., Inc.*, 911 So. 2d 161 (Fla. 3d DCA 2005) (prohibiting double recovery for damages under alternative theories of liability); *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 736 (Fla. 5th DCA 2000) ("Joint and several liability among multiple

tortfeasors exists when the tortfeasors, acting in concert or through independent acts, produce a single injury.").

MBI is additionally entitled to prejudgment and postjudgment interest. *See Becker Holding Corp. v. Becker*, 78 F.3d 514, 516 (11th Cir. 1996). The prejudgment interest began to accrue on February 25, 2021, the date that Defendants were required to return MBI's $2,000,000.00. *Tracfone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1303 (S.D. Fla. 2016) ("The prejudgment interest rate is the rate effective at the time of entitlement."). "In the absence of a special contract for the rate, the applicable rate of interest is generally stated in Florida Statute Section 55.03." *Id*. (quotation marks omitted). On February 25, 2021, the interest rate was 4.81%. *See* Florida Department of Financial Services, "Current Judgment Interest Rates," *available at* https://www.myfloridacfo.com/division/aa/local-governments/judgement-interest-rates. From February 25, 2021 until the date of judgment, the Court calculates the amount of prejudgment interest to be $182,121.34.

MBI is also entitled to attorneys' fees under FDUTPA. Fla. Stat. § 501.2105(1).

Given Barnes and Jones's failure to defend themselves in this action, the Court need not consider whether they are entitled to a set-off due to payments made by the other Defendants in this case. *See, e.g.*, *Hollister Inc. v. Mitchell*, No. 15-cv-1082, 2017 WL 3279166, at * 4 (M.D. Fla. June 29, 2017); *Implant Enviro-Systems 2000 Atlanta, Inc. v. Lee*, No. 15-cv-0394, 2015 WL 13297963, at *7 (N.D. Ga. June 9, 2015).

**IV. CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Final Judgment shall be entered in favor of MBI Services, LLC, and against Defendant Terry Barnes and Defendant Gregory Jones in the amount of $2,000,000.00, plus prejudgment interest in the amount of $182,121.34, for a total of **$2,182,121.34**;

2. The Court will enter Final Judgment separately;

3. The Court reserves jurisdiction to address the reasonable fees and costs recoverable to MBI Services, LLC.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 17, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record